## STEPHEN FLANAGAN v. J. M. DUNCAN ET AL.

APPEAL BY J. M. DUNCAN FROM THE COURT OF COMMON PLEAS
NO. 2 OF PHILADELPHIA COUNTY.

Argued January 28, 1890—Decided March 24, 1890.
[To be reported.]

(*a*) Flanagan brought an action against Duncan to recover, by way of contribution, a proportionate part of a judgment which had been rendered in a New York court against Flanagan, Duncan and others, and had been paid by Flanagan, and also a proportionate part of the expenses of the suit in which it was rendered. The judgment was entered in 1887, in a suit commenced in 1874, upon a contract of the defendants therein, made in 1872.

(*b*) Duncan's affidavit of defence averred that he was adjudicated a bankrupt in 1878 and received his discharge in 1881; that he was informed that the New York suit had been abandoned, but that nearly nine years after its commencement, without notice to or knowledge by the affiant, a supplemental complaint was filed, to which Flanagan made answer, and the suit was practically tried upon the supplemental complaint and answer so filed.

(*c*) The affidavit averred, further, that Flanagan was represented in the New York suit by a law firm who undertook to appear for all the defendants and were aware of the bankruptcy proceedings; that, subsequent to his discharge, Flanagan and the lawyers ignored the affiant and their duty to plead his discharge, while assuming to act for him, and that Flanagan renewed the proceedings in 1883, without the affiant's knowledge and without giving him an opportunity to plead the discharge himself:

1. As the averments in the affidavit of defence impugned the good faith of Flanagan in his conduct of the defence in the New York suit, and as a recovery upon the equitable principle of contribution can be had only when the plaintiff's hands are clean, Flanagan was not entitled to judgment for want of a sufficient affidavit of defence; whether, aside from the question of good faith, the discharge in bankruptcy would bar the claim, not decided.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 49 July Term 1889, Sup. Ct.; court below, No. 159 December Term 1888, C. P. No. 2.

On December 28, 1888, Stephen Flanagan, surviving James

Statement of Facts.

M. Flanagan, partners trading as S. & J. M. Flanagan, brought assumpsit against Jacob M. Duncan and Simon Poey, now or late trading as Duncan & Poey. The sheriff made a return of service as to Duncan, and nihil habet as to Poey.

On February 21, 1889, the plaintiff filed a statement of claim averring in substance that on September 20, 1872, S. & J. M. Flanagan, Duncan & Poey, and others, entered into a written contract for an adventure in the shipment of a cargo of beef from Galveston, Texas, to Philadelphia, on joint account, the profits and losses to be divided among the parties in proportion to their respective interests in the venture, the interest of Duncan & Poey being the one fifth; that the steamship Francis Wright was chartered for the venture, a cargo of beef was loaded on her and she sailed with it for Philadelphia, but the beef became spoiled on the way, and the venture entirely failed of success and became and was wholly ended and abandoned; that the owners of the said steamer, on October 9, 1874, brought suit in the Supreme Court of the state of New York, in and for the city and county of New York, against the said Duncan & Poey, S. & J. M. Flanagan, and others interested in the venture, claiming the sum of $6,966.86, with interest, as a balance due for the charter and hire of the said steamer during the aforesaid joint venture; that defence was taken to the said suit by all the parties defendant, including the said Duncan & Poey; counsel were employed, witnesses subpœnaed and arrangements made for trial, and the said cause came on for trial in November, 1883, resulting in a verdict and judgment thereon, entered on November 10, 1883, for the plaintiffs for $9,487.45 damages, with costs; that thereupon all the said defendants appealed from the judgment to the said court at general term, where the said judgment was afterwards, in 1887, affirmed; that all the fees to counsel, costs and expenses incident to and necessary for the conduct of the defence and the preparation for the trial and argument of the appeal, were as to so much thereof as accrued prior to the death of the said James M. Flanagan, paid by the said S. & J. M. Flanagan; and as to so much as accrued after his death, by the said Stephen Flanagan, and were so paid at the instance and request and for the benefit and account of all the said defendants, as well as of all the parties interested in the said joint adventure; that after the

Statement of Facts.

said judgment was affirmed at the general term of the said court, the said Stephen Flanagan, as survivor of his firm, and one of the defendants, was compelled to pay, under threat of execution, and did pay for the joint account of all the said defendants and parties interested in the said joint adventure, the amount of the judgment, with interest and costs, the whole of the moneys so laid out and expended by the said firm and the survivor thereof, being the sum of $13,683.64, as appears by a copy of the account thereof annexed to the statement of claim ; that under the terms of the agreement of September 20, 1872, Duncan & Poey were liable to the plaintiff for the one fifth the aggregate amount so expended, to wit, for $2,736.72, with interest ; and, in addition, were liable for a proportionate part of the contributory shares of others of the joint adventurers who had become insolvent, to wit, for $4,015.10.

A copy of the agreement for the adventure was set out in the statement of claim in full. The account appended to it was an itemized statement of all the expenditures made by the plaintiff and his firm, in connection with the suit in the New York court, which included attorney's fees and other expenses of litigation amounting to about $1,700, the debt, interest and costs paid upon the judgment amounting to about $12,000.

The defendant Duncan filed an affidavit averring a defence to the whole of the plaintiff's claim, as follows :

" The deponent, on April 27, 1878, by the decree of the District Court of the United States, for the Northern District of Illinois, was adjudicated a bankrupt under the Revised Statutes of the United States, title Bankruptcy, and on July 22, 1881, by the further and final decree of the said court, he was discharged from all debts and claims which by said title were made provable against his estate. Deponent is advised by counsel, verily believes and therefore avers, that the maximum liability of the said firm of Duncan & Poey would not exceed one fifth of the said $13,683.64, viz.: the sum of $2,736.72, and that there is no liability on the part of the said firm of Duncan & Poey to contribute to any losses sustained by the plaintiffs by reason of the decease, insolvency, absence or non-residence of their associates in the joint adventure, the loss on which this suit is brought to recover. . . . .

" Deponent further avers that the original contract was en-

tered into September 20, 1872, and that any recovery thereon is now barred by the statute of limitations.

" Defendant is further informed and believes, and expects to be able to prove on the trial of this case, that the judgment entered November 10, 1883, as stated in the plaintiff's claim, was satisfied of record on October 14, 1887.

" Defendant further says, that he was informed that said suit against him had been abandoned. He further says that the record of that suit will show that the original complaint was filed October 9, 1874, to which answer was made on December 2, 1874, by deponent. That nearly nine years after, on July 10, 1883, a supplemental complaint was filed, to which the said Stephen Flanagan made answer on September 22, 1883, and no notice thereof was ever given to deponent, nor had he any knowledge thereof. That the issue was tried practically upon such supplemental complaint and answer.

" That said Stephen Flanagan was represented by Benedict, Taft & Benedict, attorneys in New York, who undertook to appear for all the defendants served in that suit, and who were aware that deponent had been adjudged a bankrupt; and that subsequent to his discharge he was ignored in said proceedings by said Stephen Flanagan and said Benedict, Taft & Benedict, who between them undertook the conduct of the case, and whose duty it was, if it was required, to plead deponent's discharge as a bankrupt in said proceedings.

" That deponent is advised and believes and therefore avers, that said Stephen Flanagan having renewed said proceedings in 1883, without notice to or knowledge by deponent, and without having given him an opportunity to plead his said discharge so obtained in 1881, is estopped from now recovering on deponent's failure so to do."

A rule for judgment for want of a sufficient affidavit of defence having been entered, after argument thereof, the court on April 20, 1889, without opinion filed, made the rule absolute and entered judgment for the plaintiff for $2,736.72. Thereupon, the defendant Duncan took this appeal, specifying that the court erred:

1. In entering judgment in favor of the plaintiff and against said defendant.

Arguments.

*Mr. J. Howard Gendell* (with him *Mr. A. A. Hirst*), for the appellant:

1. It is believed that the reason why the court entered judgment against the defendant notwithstanding his discharge in bankruptcy, was that he failed to plead the discharge in the suit brought in the New York court. But, as the present suit is based, not upon the New York judgment, but upon the agreement, and includes expenditures not embraced in the judgment, which is set out in the statement of claim merely as matter of inducement, the judgment should be eliminated from the case entirely, and this being so, there can be no doubt respecting the effect of the discharge in bankruptcy. Under §§ 19 and 34 of the Bankrupt Act of 1867, §§ 5067–72, 5119, U. S. Rev. St., all liabilities, other than those created by fraud or embezzlement, are provable against the bankrupt's estate and are embraced within the operation of his discharge, although they may not yet be payable, or may be contingent in their character. It would be vain to discharge a partner or joint debtor from his liability directly to the creditor, if he were to be subjected to the same liability, for the same claims, to the other partner or joint debtor.

2. The contingent liability of this defendant to the plaintiff for his proportionate part of any losses which the latter might be compelled to pay, might have been valued and proved in the bankruptcy proceeding. If authority be needed for so plain a proposition, it may be found in Mace v. Wells, 7 How. 272. The cases of McMullin v. Bank, 2 Pa. 343, and Cake v. Lewis, 8 Pa. 493, in which this court reached a different conclusion, expressly on the ground that the bankrupt act of 1841 did not contain the provision of the English act respecting contingent liabilities which the act of 1867 does contain, were overruled in Fulwood v. Bushfield, 14 Pa. 90 ; Stone v. Miller, 16 Pa. 450 ; and Clarke v. Porter, 25 Pa. 141. At all events, that portion of the plaintiff's claim which never formed a part of the judgment, must necessarily be treated as we have suggested; but the plaintiff himself has affirmed our position by treating the whole of the claim alike. The failure to plead the discharge did not affect the plaintiff; he would have remained liable for and would have paid the whole debt in any event.

3. But if it were important, Flanagan cannot avail himself

Arguments.

of the failure to plead the discharge.   When the suit was again
started, over ten years after its institution, and nearly nine
years after any step taken in it, he assumed to act on behalf
of the other defendants.   In view of the agency, thus voluntarily
assumed, and of the confidence implied from the relationship
of partners, it was his duty to make every defence possible;
or, if he believed that the interests clashed, to notify Duncan,
so that, if necessary, he might retain separate counsel.   He can-
not now avail himself of his own failure to plead our defence.
As we have explained, however, the question of Duncan's
liability to the former plaintiffs is not now involved.   The ques-
tion is, whether he is liable to Flanagan on his old contract.

   Mr. George P. Rich, for the appellee:
   1. On the argument of the rule for judgment, the plaintiff
waived any claim for contribution based upon the insolvency
of others of the joint adventurers, and the sole question was
whether the defendant was liable for the one fifth of the
amounts paid by the Flanagans.   As the joint adventure was a
single and finished transaction, this action for the one fifth of
the joint expenses will lie: Kutz v. Dreibelbis, 126 Pa. 335;
Brubaker v. Robinson, 3 P. & W. 295; Galbreath v. Moore, 2
W. 86; Wright v. Cumpsty, 41 Pa. 102; Finlay v. Stewart,
56 Pa. 183; Meason v. Kaine, 63 Pa. 335.   The Flanagans,
while liable to the creditor for the whole debt, were, as to all
but their own proportion of it, sureties for the other partners
as between the others and themselves, and are entitled to sub-
rogation on the judgment, as well as to an action for contribu-
tion: Ackerman's App, 106 Pa. 1; McCormick v. Irwin, 35 Pa.
111; Bender v. George, 92 Pa. 36.   The entry of satisfaction
on the record, which is not averred to have been at the instance
of Flanagan, does not affect the plaintiff's rights: Wright v.
Grover, 82 Pa. 80; Baily v. Brownfield, 20 Pa. 41.
   2. The plaintiff's claim obviously does not fall within the
provisions of any of the sections of the bankrupt act specifying
the claims which may be proved against the bankrupt's estate.
When Duncan's proceedings in bankruptcy were commenced,
all that the Flanagans had was Duncan's personal covenant
and undertaking, as a member of the firm of Duncan & Poey,
to contribute to the expenses that might thereafter be incurred

on the suit then pending. In fact, the Flanagans individually had no claim upon him at all. Their claim against him did not arise until they subsequently were forced to pay and did pay the whole expense of the suit and the satisfaction of the judgment. No possible mode existed or could be devised for ascertaining, estimating or liquidating this expense in any manner. Until the case was tried and determined, it could not be known that there would ever be a liability to the owners of the vessel who had brought the suit.

3. The decisions upon this subject speak with no uncertain sound, and fully sustain our position that this demand, not being provable in the bankruptcy proceeding, is not barred by the certificate of discharge : Murray v. De Rottenham, 6 Johns. Ch. 52; Large v. Bosler, 2 Clark 29; Kingsley v. Prentiss, 4 Clark 71; United States v. Rob Roy, 13 B. R. 235; Loring v. Kendall, 67 Mass. 305; Fowler v. Kendall, 44 Me. 448; Eastman v. Hilbard, 13 B. R. 360; Pike v. McDonald, 32 Me. 418 (54 Am. Dec. 597); Leighton v. Atkins, 35 Me. 118. These cases are confirmed by Mace v. Wells, 7 How. 272, as the note in that case was due and payable at the time the petition in bankruptcy was filed. It is equally clear that by failing to plead his discharge in the New York court, the defendant has lost whatever benefit he might have derived from it. The discharge does not pay the debt, which still remains as a moral obligation : Dusenberry v. Hoyt, 10 B. R. 313; Allen v. Ferguson, 18 U. S. 1; Yoxtheimer v. Keyser, 11 Pa. 364. The bankrupt law merely permits the pleading of it as a bar to a subsequent suit: § 5119 U. S. Rev. Stat.; Bump's Bankruptcy, 748. And the right so to plead it is a personal privilege which the debtor may waive: Manwarring v. Kouns, 35 Tex. 171; Park v. Casey, 36 Tex. 536; Fellows v. Hall, 3 McLean 487; Steward v. Green, 11 Paige 535; Freeman v. Warren, 3 Barb. Ch. 635; Seymour v. Browning, 17 Ohio 362; Horner v. Spelman, 78 Ill. 206; Palmer v. Merrill, 57 Me. 26.

OPINION, MR. JUSTICE GREEN :

The liability upon which the judgment in the state of New York was recovered against the plaintiff and the defendant, jointly, grew directly out of the original article of agreement made on September 20, 1872. The plaintiff, the defendant,

Opinion of the Court.

and several others were parties to that agreement, and in it they all agreed that the charter of the steamship Francis Wright was accepted, and was "for the account and risk of all concerned in the joint venture." The owners of the Francis Wright brought the action in New York, in 1874, against the plaintiff, the defendant, and some of the other parties to the agreement, claiming the sum of $6,966.86, as a balance due for the charter and hire of the vessel during the joint venture mentioned in the agreement. For some unexplained reason, the case seems to have slumbered for nine years, and it was not until 1883 that the action was tried and resulted in a verdict and judgment for the plaintiffs, and against four of the defendants, including the plaintiff and defendant in the present suit. The liability upon which that action was founded, and for which the judgment was recovered, arose exclusively from the agreement of 1872. It was therefore in existence at the time Duncan's proceeding in bankruptcy was commenced, and at the time of the adjudication in 1878 and the discharge in 1881. We know of no reason why that liability could not have been proved against Duncan. It was, at least, a claim for unliquidated damages arising out of a contract, which is provided for by § 5067 of the Bankrupt Act.

In the affidavit of defence it is alleged that the defendant was informed that the New York suit had been abandoned, and that nearly nine years after the suit was commenced a supplemental complaint was filed to which Flanagan made answer, but never notified Duncan of it, and that he (Duncan) had no knowledge of it; and, also, that the suit was tried practically on the supplemental complaint and answer. The affidavit also alleges that Flanagan was represented in that suit by Benedict, Taft & Benedict, New York lawyers, who undertook to appear for all of the defendants, and who were aware that Duncan had been adjudged a bankrupt; that, subsequently to his discharge, Flanagan and the lawyers ignored him, and undertook the conduct of the case; and that it was the duty of the lawyers to have pleaded Duncan's discharge while assuming to act for him. The affidavit further charges Flanagan with having renewed the proceedings in 1883 without notice to or knowledge by Duncan, and without having given him an opportunity to plead his discharge. As Flanagan now seeks to

recover, in this action against Duncan, upon the equitable principle of contribution, it is necessary that his hands should be clean.  His good faith is impugned by the facts alleged in the affidavit of defence, which we must assume to be true; and, as those facts tend to show that he acted in bad faith in so conducting the defence in the New York suit that a judgment was recovered against Duncan which might have been prevented by pleading the discharge of the latter, and in giving Duncan no opportunity to plead the discharge himself, he is certainly not entitled to judgment in this action for want of a sufficient affidavit of defence.  The defendant has a right to be heard by a jury upon his allegations of fact.  Whether the defendant can plead his discharge against the present claim of the plaintiff, is a question which can be determined on the trial, after all the facts on both sides are brought out.

> Judgment reversed, and record remitted for further proceedings.