TRAMPE (HERMAN), Plaintiff, vs. WISCONSIN TELEPHONE COMPANY and another, Defendants.   [Cross-appeals.]

*January 10—February 6, 1934.*

For the plaintiff Trampe there was a brief by *Brennan, Lucas & McDonough* of Milwaukee, and oral argument by *M. J. Brennan* and *G. L. McDonough*.

For the defendant Wisconsin Telephone Company there were briefs by *Miller, Mack & Fairchild*, and oral argument by *Leon F. Foley*, all of Milwaukee.

For the defendant Wren there was a brief by *Quarles, Spence & Quarles*, attorneys, and *Arthur Wickham*, of counsel, all of Milwaukee, and oral argument by *Mr. Wickham*.

FAIRCHILD, J.    Under the facts above set forth, when the case was brought to trial before the circuit court no cause of action existed in favor of Herman Trampe against either the Telephone Company or Henry Wren.  The action was made to appear to be brought for the purposes of recovering damages on a cause of action alleged to exist, but which in fact and law did not exist, in favor of respondent.  The questions here to be determined are: (a) Did the court err

in entering judgment in favor of Herman Trampe and against appellant? and (b) Did the court err in entering judgment for contribution in favor of the defendant Wren and the American Automobile Insurance Company?

The settlement of the claim for damages by Wren with the Trampes was not brought to the attention of the court until after the trial. It is the effect of the concealment from the court of the existence of this settlement and the manner in which it was proposed to distribute the recovery, if any, in the action, with which we are concerned. It is evident that the agreement ended any right of action which respondent had against Wren. He bound himself to satisfy in full any and all judgments which he might obtain against the latter.

To permit a party to cause a trial of an action under such an arrangement would be no more than a waste of the court's time and the public money. By his stipulation, Trampe had satisfied his claim against Wren for a stipulated amount. There was placed before the court as a genuine action, a set of circumstances which did not amount to a cause of action. The finding of the trial court "that there was neither an intent to practice fraud upon the defendant Wisconsin Telephone Company, its insurer, or its attorneys, and that no fraud was practiced . . . nor were any of the said parties prejudiced during the trial of this action, as the result of the execution of said agreement of December 13, 1932, or because of the position taken by the attorneys representing the plaintiff Herman Trampe, or his wife Julia Trampe," is not sustained by the facts. A complaint is required to state in plain and concise language the ultimate facts constituting a cause of action. Sec. 263.03, Stats. The primary purpose to be served by pleadings is to acquaint the court and the parties with the facts in dispute. The plaintiff is expected to state truthfully his cause of action. The pleadings should point out the actual issues to be settled, giving notice to the

parties of the claims, defenses, and cross-demands of their adversaries. The plaintiff in this case was no longer the owner of a cause of action, arising out of the accident, against the appellant or the defendant Wren, and his complaint, had it shown the true situation, would have disclosed this. Because of the fundamental defect in the pleadings as well as the concealment from the court of the real issues at stake, the judgment in plaintiff's favor must be reversed.

Upon the question whether the appellant Wren, had he informed the court at the time of the trial of all the facts connected with this action, would be entitled in an action against respondent Telephone Company to recover by way of contribution any portion of the $1,250 which he had paid the Trampes, it may be said that it has definitely been held that action for contribution by one joint tortfeasor against the other will lie in cases where the liability arises from mere negligence. In *Western Casualty & S. Co. v. Milwaukee General C. Co.* 213 Wis. 302, 251 N. W. 491, it was held that the action would lie even though the payment was made pursuant to a settlement before action and that a final adjudication was not an essential prerequisite to such a right, provided the settlement was made in good faith. In that case one joint tortfeasor undertook independently to settle after the other had refused to co-operate with him in such settlement. The terms of the settlement, however, were made known to the other tortfeasor. The agreement with the injured party definitely precluded any further action against either tortfeasor, and the tortfeasor who made the settlement could recover no more than his one-half share of the amount paid, in an action for contribution. The whole effect of the agreement was to give fair treatment to both tortfeasors.

But the present case presents a different situation. The Telephone Company's refusal to join in a settlement could hardly be termed unreasonable in view of an action by Julia

Trampe against the Wisconsin Telephone Company, which had terminated in the company's favor, and the existence of that judgment was known to Wren when he made the settlement. The agreement between Wren and Trampe was entered into secretly; its existence and terms were never made known to the Telephone Company until the court was appealed to. The plan of the agreement definitely contemplated further recovery against the Telephone Company, and in such a manner as to leave the latter bearing an unreasonably large proportion of the burden. The result to be effected was such that Wren would possibly reap a benefit therefrom in the event of such recovery, even in excess of his one-half share of the amount he had actually paid. Viewing this agreement in the light of its conceded purpose and the attending secrecy, we cannot escape the conclusion that Wren's whole purpose was not to secure a fair and equitable distribution of the burden of a common liability, but instead was to relieve himself of as much of the burden as he could by throwing it upon the shoulders of the Telephone Company, and to do this by means of an undisclosed agreement the effect of which was to make his interests in the matter exactly opposite from what they appeared by the pleadings to be, and to that extent causing the Telephone Company injury.

It is true that Wren owed no particular duty to the Telephone Company. On the other hand, he was bound to act fairly before asking the court to assist him to obtain fair treatment from another. As said in 6 Ruling Case Law, p. 1040:

"As the right to contribution is based on equitable principles, the fact that the plaintiff was guilty of bad faith in defending a suit on the joint contract and in failing to plead the defendant's discharge in bankruptcy is a good defense to the action for contribution, and in fact any equity existing in favor of the defendant against the plaintiff may

be shown (citing *Flannagan v. Duncan,* 133 Pa. St. 373, 19 Atl. 405; note, 10 Am. St. Rep. 646, 647)."

In *Gafford v. Tittle,* 224 Ala. 605, 141 South. 653, the plaintiff had been compelled to pay as surety a note on which he was indorser. He sought contribution against defendant, a co-indorser, whom he had induced by fraud and misrepresentations to sign the note as indorser. The court denied recovery, saying:

"Contribution at law rests upon the broad basis of natural justice, the same principles recognized in courts of equity, viz.: that joint and several obligors, bound by a like and common obligation, implies a like sharing of the common burden. When one or more satisfy and procure a discharge of the common obligation, . . . the right of contribution arises as against non-contributing co-obligors. Contribution being an equitable demand, any inequitable conduct, on the part of those seeking contribution, inducing the party against whom contribution is sought to enter into the common obligation, is a good defense."

Under the principles expressed in the above quotations, with which we fully agree, it would seem that in view of all the circumstances existing in the present case, Wren must be denied any contribution whatever. To hold the opposite would open the door to sharp practice. It would protect a party who was so inclined, by deals similar in structure to the one here, to attempt by such deals to reap an unwarranted gain. He could rest secure in the knowledge that if successful in keeping the matter secret, he would reap a profit, and if he were unsuccessful he would suffer no loss. This practice cannot be tolerated. Wren's connection with the subject-matter of the action was that of joint tortfeasor. He settled the claim, but he cannot capitalize it for the purpose of gaining a financial advantage, or so use it as to keep in existence a cause of action which has been put to rest.

We accept the statement that there was no intention of wrongdoing in these particulars, but the fact still remains

that imposition was practiced upon the court and that it was done by withholding facts which were material and ought to have been disclosed before the trial started. A question of public policy enters here. The deliberate withholding of information of the existence of the settlement of important matters so clearly imposed a fictitious suit upon the court that we are bound to hold that it impeded the regular administration of justice, that it resulted in the trial of issues which were not real, and the action should be dismissed.

The American Automobile Insurance Company mentioned in the judgment was not a party to the action and the reference to it evidently was inadvertently made. Under the ruling, no further consideration need be given that matter.

*By the Court.*—Judgment reversed, cause remanded with directions to dismiss the complaint, the cross-complaint, and to enter judgment in favor of appellant.