717 So.2d 668 (1998)
Angela M. THIBODEAUX, Plaintiff-Respondent,
v.
FERRELLGAS INC., et al., Defendants-Relators.
No. W97-1267.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1998.
*669 John Wheadon deGravelles, Baton Rouge, for Angela M. Thibodeaux.
*670 Michael J. Remondet, Jr., G. Andrew Veazey, Lafayette, Michael C. McMullen, Kansas City, MO, for Ferrellgas, Inc. et al.
J.B. Jones, Jr., Cameron, for Michael A. Bonin et al.
John Edmund McElligott, Jr., Lafayette, Steven G. Emerson, Kansas City, MO, for Empire Gas.
David Ross Frohn, Lake Charles, for National Union Fire Ins.
Ronald Adams Johnson, New Orleans, for London Underwriters.
Henry LeBas, Lafayette, for Webstone & Goddard.
Michael Lea Hyman, Baton Rouge, for Continental Ins.
Before WOODARD, GREMILLION and PICKETT, JJ.
GREMILLION, Judge.
In these consolidated cases, we are asked to review the trial court's rulings on three pre-trial issues: (1) the validity of a "Mary Carter" agreement in docket number 97-1290; (2) whether the "Mary Carter" agreement should be disclosed to the jury in docket number 97-1347; and (3) whether the "Mary Carter" agreement is res judicata to the settling defendant against a third party demand of the non-settling defendants in docket number 97-1267. For the reasons set forth below, we deny the writs in docket numbers 97-1290 and 97-1267 and grant the writ and make it peremptory in docket number 97-1347.

BACKGROUND
This case arose following an explosion and fire on August 12, 1995, which caused serious and disfiguring injuries to each of the plaintiffs: Angela M. Thibodeaux, Michael A. Bonin, Brent Michael Benoit, Jeffrey W. Kebodeaux, William John (Billy) Britt, and John Perez. The plaintiffs were guests in a cabin located in Holly Beach, Cameron Parish, Louisiana, which was owned and operated commercially by one of the defendants, Lawrence Lanclos. Each of the plaintiffs subsequently filed suit against Ferrellgas, Inc., Ferrellgas L.P., Ferrellgas Companies, Inc., Ferrellgas Partners, L.P., and Paul R. Deshotel (sometimes referred to collectively as "Ferrellgas") and their insurers. On June 27,1996, Ferrellgas entered into a settlement agreement, which has been referred to as a "Mary Carter" agreement,[1] with the plaintiffs. As part of the agreement, Ferrellgas and its insurer agreed to pay plaintiffs eighteen million dollars in exchange for plaintiffs' agreement to hold it harmless and dismiss any and all remaining claims which they may have against it. In the agreement, the parties indicated that they believe Empiregas and the valve manufacturer were liable for the injuries sustained by plaintiffs in the August 12, 1995 incident. As part of the settlement agreement, Ferrellgas agreed to assist plaintiffs in prosecuting those claims against Empiregas and the others, as well as to retain the services of the plaintiffs' attorneys in addition to their own attorneys in prosecuting those claims. The plaintiffs also agreed to retain the services of Ferrellgas' attorneys in addition to their own in the prosecution of the lawsuit. The agreement also provided for a fee agreement between the plaintiffs, Ferrellgas, plaintiffs' attorneys, and Ferrellgas' attorneys.
On July 12, 1996, five of the six plaintiffs filed a petition for damages against, among others, Empiregas Inc., Empiregas Inc. of Eunice, Empiregas Inc. of Lake Charles, and Empiregas Inc. of Louisiana (referred to collectively as "Empiregas"). The remaining plaintiff (Thibodeaux) filed a similar law suit on July 26, 1996. Empiregas answered the plaintiffs' petition and filed a third-party demand against Ferrellgas on August 27, 1996. Eventually, a motion for dismissal with prejudice based on the settlement agreement was filed on behalf of Ferrellgas on November 4, 1996.
Ferrellgas subsequently filed a peremptory exception of res judicata claiming that the settlement had the effect of a prior judgment. Therefore, it argued that all claims against them including Empiregas' had been adjudicated in the settlement. Empiregas, on the other hand, filed exceptions claiming *671 the "Mary Carter" settlement agreement between the plaintiffs and Ferrellgas was null and void as against public policy; that the claim should be dismissed because of the plaintiffs' want of interest in the lawsuit; and that the entire agreement should be disclosed to the jury.
The trial court eventually denied Empiregas' exceptions finding "no authority that such an arrangement in association with the settlement of claims between litigants is unenforceable or against public policy of the State of Louisiana." The trial court also held that the entire agreement with the exception of the amount of the settlement should be published to the jury. Finally, the trial court denied Ferrellgas' exception of res judicata. Supervisory writs were taken from each ruling.
We reviewed the trial court's judgment upholding the validity of the "Mary Carter" agreement and found no error in its judgment. Thibodeaux v. Ferrellgas, Inc., an unpublished writ, 97-1290 (La.App. 3 Cir. 10/20/97). We also reviewed the trial court's ruling regarding the introduction of the "Mary Carter" agreement into evidence. On that issue, we granted the writ and made it peremptory holding that the evidence of the settlement agreement could be admitted, but should be limited to (l) the fact that Ferrellgas settled with the relators, and (2) the fact that Ferrellgas will receive a percentage of the relators' recovery from the other defendants. Bonin v. Ferrellgas, Inc., an unpublished writ, 97-1347 (La.App. 3 Cir. 11/12/97), 706 So.2d 479. Finally, we reviewed the trial court's judgment denying Ferrellgas' motion for peremptory exception of res judicata and denied the writ finding no error in the trial court's ruling. Thibodeaux v. Ferrellgas, Inc., an unpublished writ, 97-1267 (La.App. 3 Cir 10/20/97).
From these rulings, writs were granted by the Louisiana Supreme Court and the cases remanded to this court for consolidation and briefing, argument and opinion. Thibodeaux v. Ferrellgas, Inc., 97-2906 (La.1/9/98); 705 So.2d 1085; Thibodeaux v. Ferrellgas, Inc., 97-3098 (La.1/9/98); 705 So.2d 1086; Bonin v. Ferrellgas, Inc., 97-3096(La. 1/9/98); 705 So.2d 1086.

THE "MARY CARTER" AGREEMENT
Empiregas claims that "Mary Carter" agreements generally should be declared void because they violate Louisiana public policy. More specifically, it claims that the "Mary Carter" agreement in the instant case particularly violates Louisiana public policy in that it creates a "sham of adversity" which would result in an unfair trial; that it is a partial settlement and not a true compromise; that it violates La.Civ.Code art. 3071 because it promotes rather than ends litigation; that the contingency fee arrangement in the agreement violates the Rules of Professional conduct; and that Ferrellgas' attorneys have purchased a litigious right in the law suit. Empiregas further argues that the agreement encourages distortion of the truth resulting in an unfair advantage to the plaintiffs and Ferrellgas, and an unfair trial to Empiregas. The trial court rejected these arguments finding instead that the agreement was valid and enforceable.
The First Circuit recently observed:
Agreements with a settling defendant who remains a party at the trial and who retains a financial stake in the plaintiff's recovery have been called "Mary Carter agreements" since the 1967 Florida decision of Booth v. Mary Carter Paint Company, 202 So.2d 8 (Fla.Dist.Ct.App.1967), overruled, Dosdourian v. Carsten, 624 So.2d 241 (Fla.1993). See Rick v. State, Through Department of Transportation and Development, 619 So.2d 1149, 1160 (La.App. 1st Cir.1993) (concurring opinion), affirmed in part, reversed in part on other grounds, 93-1776, 93-1784 (La.1/14/95), 630 So.2d 1271. The settling defendant guarantees the plaintiff a minimum payment, which may be offset in whole or in part by an excess judgment recovered at trial against the non-settling defendant. Further, the settling defendant remains a party to the lawsuit, and is generally required by the agreement to participate at the trial on the plaintiff's behalf. Elbaor v. Smith, 845 S.W.2d 240 (Tex.1992); see also Christopher Vaeth, Annotation, Validity and Effect of "Mary Carter" or Similar Agreement Setting *672 Maximum Liability of One Cotortfeasor and Providing for Reduction or Extinguishment Thereof Relative to Recovery Against Nonagreeing Cotortfeasor, 22 A.L.R.5th 483, 497-498, 500-501 (1994).
Stockstill v. C.F. Indus., Inc., 94 2072, p. 8-9 (La.App. 1 Cir. 12/15/95); 665 So.2d 802, 811, writ denied, 96-0149 (La.3/15/96); 669 So.2d 428.
The term "Mary Carter" agreement refers to a contract between a plaintiff and one co-defendant typically with the following features: (1) secrecy; (2) the contracting defendant remains a party to the suit; (3) the contracting defendant's liability will be reduced proportionately by increasing the liability of its co-defendants; and (4) the contracting defendant guarantees the minimum recovery to the plaintiff. See generally Wilkins v. P.M.B. Systems Engineering, Inc., 741 F.2d 795 (5th Cir.1984).
A few states have repudiated "Mary Carter" agreements declaring them void as against public policy,[2] and some commentators have criticized "Mary Carter" agreements as distorting the entire litigation process resulting in unfair trials to non-settling defendants.[3] We, however, have reviewed the Louisiana jurisprudence and find guidance that would lead us to the conclusion that "Mary Carter" agreements, as applied in this and other cases in Louisiana, do not violate public policy particularly when the jury has been properly instructed regarding the agreement. Secrecy is the essence of a true "Mary Carter" agreement, and it is that aspect of the agreement that has rightly caused such agreements to fall from favor. We note the Florida Supreme Court voiced the same feelings when it stated:
Secrecy is the essence of such an arrangement, because the court or jury as trier of the facts, if apprised of this, would likely weigh differently the testimony and conduct of the signing defendant as related to the non-signing defendants. By painting a gruesome testimonial picture of the other defendant's misconduct or, in some cases, by admissions against himself and the other defendants, he could diminish or eliminate his own liability by use of the secret "Mary Carter Agreement."
Ward v. Ochoa, 284 So.2d 385, 387 (Fla.1973) (emphasis added).
We note with approval our First Circuit colleagues' opinion in Stockstill, 665 So.2d 802, as well as the concurring opinion in Rick v. State, Through DOTD, 92-1000 (La.App. 1 Cir.1993); 619 So.2d 1149, affirmed in part, reversed in part on other grounds, 93-1776, 93-1784 (La.1/14/95), 630 So.2d 1271. In Stockstill, the court did not address the issue of whether such agreements are void as against public policy, but did find that once plaintiffs entered into a "Mary Carter" agreement with the settling defendant, there was a realignment of the parties. In so finding, the court held that the trial court should instruct the jury that there had been such a realignment of the parties and that the settling defendant had a financial interest in the plaintiffs' lawsuit. The court also ruled that the specific terms of the "Mary Carter" agreement relating to reimbursement and the amount of the settlement would not be given to the jury. In Rick, the writer of the concurring opinion would allow the introduction of the "Mary Carter" agreement to the jury because the realignment of the parties may suggest a bias or interest on the part of the settling defendant to the jury. Finally, we agree with the recent opinion of the Fifth Circuit Court of Appeal in Howard v. ICRR, 97-1041 (La.App. 5 Cir. 3/25/98); 709 So.2d 1044, which held that when the fact finder has been apprised of the existence of a "Mary Carter" agreement, these agreements are not against public policy in the absence of legislation to the contrary.
Primarily, the element of secrecy makes the typical "Mary Carter" agreement abhorrent. However, this can be remedied by adequately explaining to the jury that the defendant guarantees a minimum recovery to the plaintiff, remains in the litigation, and *673 may see its liability proportionately reduced by cooperating with the plaintiff to increase the co-defendant's liability. Once this has been done, the agreement can hardly be said to create a "sham of diversity."
Further, the settlement is a true compromise between the settling defendant and the plaintiffs. Both receive something in the bargain. The plaintiffs receive a sum of money, and their claim against the defendant is dismissed from the lawsuit, and in the instant case, is held harmless by the plaintiffs. Empiregas argues that while the agreement may contain most of the elements of La.Civ.Code art. 3071,[4] it does not put an end to the lawsuit. We reject that argument and hold that in fact the agreement between the plaintiffs and Ferrellgas puts an end to the lawsuit between them.
We, therefore, find that settlement agreements, as in the case at hand, do not violate public policy when they are no longer secret and the jury is made aware of their terms and conditions. We also hold that the fee arrangement is a permissible contingent fee arrangement and that the attorneys did not purchase a litigious right in the plaintiffs' lawsuit. We decline to address the ethical questions presented and leave them for another time, and another venue. In so finding, we deny the writ.

THE "MARY CARTER" AGREEMENT AS EVIDENCE
Obviously, the next issue we must address is to what extent the terms and conditions of the "Mary Carter" agreement should be published to the jury. The trial court would exclude only the amount of the settlement from the jury. We disagree. Clearly, the amount should be excluded. La. Code Evid. art. 413. However, settlements are generally excluded from the jury, but may be offered when used to prove bias or prejudice. La.Code Evid. art. 408(A). As we have noted above, because the parties are now realigned, the agreement or portions thereof which would show bias or prejudice on the part of Ferrellgas should be admitted.
The jury should receive only relevant evidence which is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.Code Evid. art. 401. However, where evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or is a waste of time. La.Code Evid. art 403.
The agreement and its addendum contain several provisions. First, it provides that Ferrellgas and its insurers agree to settle all claims with the plaintiffs. Next, it provides that the plaintiffs agree to settle all claims they may have against Ferrellgas by dismissing any and all claims against them and holding them harmless in exchange for eighteen million dollars. We find the jury should be advised of these agreements, excluding the actual amount of the settlement, as it is relevant to prove bias and interest.
The next provision espouses the settling parties' belief that Empiregas and its affiliates and related entities and insurers and the valve manufacturer are liable for the plaintiffs' injuries. While being somewhat innocuous, this provision is a conclusion made by the settling parties and, as such, is not relevant. Further, such gratuitous provisions could have an unfair prejudicial effect, confuse the issues, and mislead the jury. The jury should not be advised of this provision.
The next provision is the employment arrangement between the plaintiffs, Ferrellgas, and their attorneys in the further prosecution *674 of the lawsuit. It is irrelevant to the existence of any fact including the interest or bias of Ferrellgas. Further, the introduction of such information to the jury could only inflame them. Its probative value, if any, would be far out weighed by its prejudicial effect. The other provisions concerning the fee arrangement and control of the litigation are also irrelevant having no value in proving the existence of any fact at issue.
The addendum provides that the parties agree to apportion the proceeds of any judgment or settlement from Empiregas, or anyone else, with sixty percent going to Ferrellgas and forty percent to the plaintiffs. This is also an essential element of the settlement and should be published to the jury. However, the exact percentages should not be given it. This would possibly be a two-edged sword which could only serve to confuse or mislead the jury by giving them an idea as to how to apportion fault between the parties. It is sufficient for the jury to know that Ferrellgas will share a substantial portion of any judgment the plaintiffs receive without knowing the actual percentages.
There exists a "Contingency Arrangement and Agreement to Divide Proceeds" which contains the provisions found in the other agreements. Since we have addressed those issues above, we need not consider it here.
We, therefore, grant the writ and make it peremptory and hold that the trial court shall advise the jury that there was a settlement between Ferrellgas and their attorneys and the plaintiffs and their attorneys resulting in a realignment of the parties; that Ferrellgas paid the plaintiffs a sum of money and, in return, the plaintiffs have agreed to hold Ferrellgas harmless and dismiss all claims they may have against it; and that Ferrellgas has a financial interest in the lawsuit and will receive a substantial portion of any judgment the plaintiffs receive from any of the non-settling defendants. We will leave it to the wisdom of the trial court to fashion its publication and/or charge to the jury.

RES JUDICATA
Ferrellgas filed the peremptory exception of res judicata claiming that since their settlement agreement with the plaintiffs was valid, all of the plaintiffs' claims have been dismissed. It argues that since the plaintiffs have no further claims, the non-settling defendants have no claims against them, because under La.Code Civ.P. art. 1111, a third-party demand to the principal demand is a derivative action. According to Ferrellgas' argument, since the settlement dismissed the principal demand the derivative action must also fall. The trial court rejected that argument and denied the exception of res judicata. We agree.
Initially, we hold that res judicata is not the proper exception for this situation. While Ferrellgas correctly asserts that a compromise settlement can form the basis of a plea of res judicata, it ignores the fact that res judicata applies only to final judgments between the same parties. La.R.S. 13:4231. This settlement was only between the plaintiffs and Ferrellgas. Empiregas was not a party, therefore, res judicata does not apply.
On the other hand, Empiregas argues that this court has rendered inconsistent rulings holding in one writ application that the "Mary Carter" agreement was valid. Then, in this instance, it argues that if the valid settlement agreement would have the effect of res judicata and we found res judicata did not apply, we necessarily found the agreement to be invalid. This argument misses the mark by a wide margin. As we have said, res judicata can only apply between the same parties. Further, Empiregas may maintain its cause of action against Ferrellgas because it is an incidental demand to the plaintiffs' principal demand. La.Code Civ.P. art. 1039. Under Article 1039, if an incidental demand has been pled prior to the motion by the plaintiff in the principal action to dismiss the principal action, a subsequent dismissal of the principal action does not affect the incidental action, which must be tried and decided independently of the principal action.[5] Empiregas filed its incidental *675 demands against Ferrellgas on August 27, 1996. It was more than two months later on November 4, 1996, that plaintiffs dismissed Ferrellgas from the lawsuit. Until a judgment dismissing a suit is filed, the proceeding is still pending even if the parties have settled the matter. Jordan v. Sutton, 491 So.2d 743 (La.App. 1 Cir.1986). Under the plain language of Article 1039, Ferrellgas' dismissal does not affect Empiregas' incidental demands. Consequently, the rulings of the trial court and this court on this issue were not inconsistent with prior rulings nor did they declare the "Mary Carter" agreement to be void and invalid as against public policy.
Neither Ferrellgas', nor Empiregas', arguments on this issue have any merit. We, therefore, find no error in the trial court's ruling and deny the writ.

CONCLUSION
For the foregoing reasons, we find no error in the trial court's ruling in docket number 97-1267 of this court and deny the writ; we reverse the trial court's ruling in docket number 97-1347 and grant the writ and make it peremptory; and we find no error in the trial court's ruling in docket number 97-1290 and deny the writ. Costs of the writ application shall be paid one-half by Ferrellgas and one-half by Empiregas.
WRIT DENIED, WRIT GRANTED, AND MADE PEREMPTORY.
WOODARD, J., concurs.

APPENDIX A

AGREEMENT
This Agreement is made by and between: Ferrellgas, its subsidiaries, parents, employees, insurers and any and all related persons or organizations; TIG Insurance Company, its subsidiaries, parents, employees, insurers and any and all related persons or organizations; Angela M. Thibodeaux; Michael A. Bonin, et al.; Brent Michael Benoit, et al.; Jeffery W. Kebodeaux, et al.; William John Britt, et al.; and John Perez, et al., all appearing through their respective attorneys.
1. Recitals
A. Angela M. Thibodeaux, Michael A. Bonin, et al., Brent Michael Benoit, et al., Jeffery W. Kebodeaux, et al., William John Britt, et al., and John Perez, et al. filed suit against Ferrellgas and TIG in the 38th Judicial District Court for Cameron Parish, Louisiana, seeking to recover damages for personal injuries resulting from incidents which occurred in Cameron Parish, Louisiana, on August 12,1995;
B. Ferrellgas, TIG and all insurers for Ferrellgas have agreed to settle all claims made by the plaintiffs against Ferrellgas and its insurers;
C. Ferrellgas and TIG have agreed to pay to plaintiffs $18,000,000, in exchange for which, plaintiffs have agreed to hold harmless and dismiss any and all remaining claims which they may have against Ferrellgas, TIG and any other insurer of Ferrellgas;
D. The parties to this Agreement believe that Empire Gas, its affiliates and related entities and insurers and the valve manufacturer and related entities are liable for the injuries sustained by plaintiffs on or about August 12,1995;
E. In order to prosecute those claims against Empire Gas, its affiliates and related entities, and the manufacturer and possibly others, plaintiffs, Ferrellgas and TIG have agreed to retain the services of The Jones Law Firm, John de-Gravelles, and The Jeansonne & Remondet Law Firm to act as their attorney in prosecuting the claims against said purported defendants, subject to the terms and conditions which appear in the balance of this Agreement and other Agreements;
2. Fee Arrangement
A. In consideration of the work to be performed by them (which is outlined in the following paragraph), all plaintiffs, TIG, and Ferrellgas agree to a contingency fee of 40 percent of the gross amount which is recovered through the prosecution of their claims against said defendants, and other persons, firms, and corporations having liability in the *676 premises. Such fee is to be divided as follows: ½ to The Jones Law Firm and John deGravelles, et al. and ½ to Jeansonne & Remondet, et al.
3. Control of the Litigation
A. The appearers shall consult among themselves regarding the initiation of, prosecution of, and settlement of any claim which may be filed on their behalf, in an effort to reach a good faith consensus with respect to all such matters;
4. Effective Date
A. This Agreement has been executed by the parties in Lafayette, Louisiana and shall be effective as of the 27th day of June, 1996.
This Agreement has been entered into after consultation with and the consent of the parties.
ADDENDUM TO JUNE 27, 1996, AGREEMENT:
F. The Parties to this agreement agree to apportion the proceeds of any settlement and/or judgment obtained against Empire Gas, its affiliates and related entities, and insurers and the valve manufacturer and related entities as follows:
1. Ferrellgas/TIG60% up to a maximum amount of $18 million;
2. The plaintiffs40%
NOTES
[1] See Appendix A for the pertinent parts of the Agreement and its addendum.
[2] Dosdourian v. Carsten, 624 So.2d 241 (Fla. 1993); Elbaor v. Smith, 845 S.W.2d 240 (Tex. 1992); Lum v. Stinnett, 87 Nev. 402, 488 P.2d 347 (1971); and Trampe v. Wisconsin Telephone Co., 214 Wis. 210, 252 N.W. 675 (1934).
[3] See note, Elbaor v. SmithShattering the "Sham of Adversity" of Mary Carter Agreements, 39 Loy.L.Rev. 359 (1993).
[4] Art. 3071. Transaction or compromise, definition

A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
[5] We note that the trial court has granted Empiregas' motion for summary judgment and dismissed it from the lawsuit on January 21, 1998.