[No. 37614. Department One. June 17, 1965.]

VIVIAN MAE CURTIS, *as Administratrix, Respondent,* v. RICHARD M. BLACKLAW, *et al., Appellants.**

*Minnick & Hahner,* for appellants.

*Critchlow, Williams & Ryals,* by *David E. Williams,* for respondent.

*Reported in 403 P.2d 358.

HALE, J.—Most accidents are caused; a few simply happen. We can never know for sure which kind took the life of Vernon Curtis. We do know that when he left his wife, Vivian, and his 14-year-old son, George, that morning of March 20, 1963, to report on the job as leadman for a highway maintenance crew, neither had the slightest reason to doubt that he would return home that night. He died not from the hazards of his work or even from a highway accident, but while standing on a pile of dirt off the highway and from the sudden, unexpected brake failure in an oncoming car. Did the accident just happen? Was the court obliged to declare it an emergency? or, Could the jury rightly decide the issues of negligence on standards of ordinary care without the cautionary emergency instruction?

Richard Blacklaw, defendant, a farmer in the Eureka district, bought a 1959 Cadillac on February 15, 1963, about a month before the accident, from Stromme Motor Sales in Pasco. He paid $2,500 for it, $100 less than the dealer asked. He said that on a routine check he noticed a peculiar noise emanating from the rear-end mechanism, and the dealer reduced the price $100 on the buyer's assuming any risk represented by the strange sound. There were only a few other defects—all minor—such as door latch imperfections, an interior light not working, the clock fuse needing replacement, and a defective radio aerial, all of which were corrected by the dealer before he turned the car over to Mr. Blacklaw. The brakes worked well.

Mr. Blacklaw said that he did not check the brake flex lines and took the car having every reason to believe that the brakes were sound. He said that the brakes worked exceptionally well throughout the month that he and Mrs. Blacklaw drove the car, and prompted no more than a routine check of the fluid level in the brake cylinder. During the month prior to the accident, he had the car lubricated and the oil changed at a service station in Walla Walla and the oil changed at another station in The Dalles, Oregon. Neither place mentioned any defects in the braking

system flex line—the bill from the Walla Walla station simply noting that the fluid level in the brake cylinder had been checked.

Evidence submitted by automotive experts after the accident conclusively showed that the flex line leading to the left front wheel brake had, for a long time, been rubbing against the wheel when the wheels were turned to the extreme left. Both the inner edge of the wheel rim and the flex line showed the effects of abrasive action, the flex line being visibly scored and marked and the inner wheel rim surface appearing shiny to the naked eye. No doubt exists that the scoring and wear on the flex line or hose would be visible on its exterior surface or that a rupture in the line would destroy the braking system through loss of the hydraulic brake fluid. One expert said, "I don't see how any lubrication man could have missed it in the process of lubricating the car." He said that all a lubrication man would have to do is "just look up"—adding that any ordinary person would have seen it.

The 1959 Cadillac brake system, said the experts, holds one and one-half pints of brake fluid and generates a braking pressure varying from 400 to 900 pounds per square inch depending on its condition. Evidence showed that the brake hose, or flex line, had been defectively installed, that is, by twisting it clockwise so as to produce a kink which forced the line over against the wheel on left turns.

Mr. Blacklaw had never had the brakes inspected or done so himself. Neither he nor his wife knew that the flex line had been scored and worn, nor had either experienced any trouble with the brakes.

At about 10 in the morning, Mrs. Blacklaw drove the Cadillac south on the highway from Prescott to Walla Walla, keeping up to the 60 mile-per-hour speed limit on straight stretches, but reducing her speed for curves. Approaching a place about one mile north of the road crew at 60 miles per hour, she came upon three signs on the right (west) side of the road, warning that a work crew was ahead and reading *Slow, Caution Men Working,* and *Flag-*

*man Ahead.* She says that she reduced her speed then from 60 to 45 miles per hour and, continuing on, encountered a *Slow* cone on the highway which she noticed 600 feet before reaching it. She says that she then drove into a gradual turn past the slow cone and, after passing it, saw, some 400 feet ahead, a large orange dump truck blocking the highway and a passenger car stopped partly off the roadway. She applied her brakes. They held momentarily and then failed completely but, she says, reduced her speed to about 30 miles per hour. She swerved the Cadillac right to avoid the halted car and went off the traveled part of the roadway on to the shoulder and did not see Mr. Curtis until about 80 feet from him.

Mr. Curtis was standing on a pile of dirt, 5 feet off the traveled portion of the highway facing the rear of the truck, directing its unloading operation. Mrs. Blacklaw tried to steer between the rear of the truck to her left and Mr. Curtis, on the west shoulder to her right—a distance of 12 feet 10 inches—and failed, hitting Mr. Curtis with her right front fender and hurling him into the air in a cloud of dirt. He died a few moments later.

Plaintiff showed from engineering measurements that the orange dump truck in the position it occupied across the highway at the time of the accident would be visible to a southbound driver in Mrs. Blacklaw's approaching situation for at least 600 feet. Other evidence showed that the dump truck had a flashing amber light on the roof of its cab, but Mrs. Blacklaw did not recollect seeing it. She says that, after passing the first three warning signs, she expected to encounter a flagman to give her instructions, but acknowledged that stopped vehicles were also to be expected before reaching the road work.

Vivian Curtis, as administratrix, brought the action for wrongful death. From a judgment against the Blacklaws entered on a $66,000 verdict, comes this appeal.

Appellants assign error to instruction No. 17 which charges the owner of an automobile with knowledge of such defects in the braking system as would have been

disclosed by a reasonable inspection,[1] and urge that this instruction goes prejudicially beyond the evidence by imposing a duty to inspect the brakes under circumstances uncalled for in the exercise of reasonable care and prudence. Whether this instruction was proper depends both on the evidence and the other instructions, including those on automobile operations and maintenance.

Instruction No. 12 told the jury that all motor vehicles must, by statute, be equipped with good brakes and a serviceable horn;[2] instruction No. 15 declared the violations of statutes governing motor vehicles to be negligence as a matter of law, imposing no liability unless the negligence proximately caused the injury; and instruction No. 16 stated as follows:

> You are instructed that where the brakes on an automobile have previously functioned properly, but sud-

---

[1]"It is negligence for an owner of an automobile to operate such automobile along a public highway with knowledge that the braking system thereof is defective. In this connection, you are further instructed that, in law, an owner of an automobile is charged with actually knowing everything that would have been disclosed by a reasonable inspection of its brakes and braking system had such reasonable inspection, in fact, been made. The law will not hear an automobile owner say that he was unaware of defects in the braking system, at the time of the failure thereof, if such defects were of such a nature as to be discoverable by a reasonable inspection of such braking system at any time before such failure." Instruction No. 17.

[2]"The laws of the State of Washington provide:

"Every motor vehicle, other than a motorcycle, when operated upon a public highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including two separate means of applying such brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that the failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on it at least two wheels on the same axle.

" 'All brakes shall be maintained in good working order and shall be so adjusted as to operate equally as practicable with respect to the wheels on opposite sides of the vehicle.

" 'The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn, but shall not otherwise use such horn when upon the highway.' " Instruction No. 12.

denly fail to respond, their failure to respond does not render the driver guilty of negligence unless the driver knew or, in the exercise of reasonable care, should have known of the defective condition of her brakes.

We believe that instruction No. 17, when read in conjunction with the other instructions, correctly states the law but we now examine the evidence to ascertain if the instruction was properly invoked by the facts.

That plaintiff submitted evidence from which the jury could find want of reasonable care in maintaining the brakes may be seen from our decision in *Allen v. Schultz,* 107 Wash. 393, 181 Pac. 916, 6 A.L.R. 676 (1919), where we said:

> One who operates on the streets of a city such a dangerous instrumentality as an automobile is bound to take notice that he may be called upon to make emergency stops, and it is negligence on his part not to keep the automobile in such condition that such stops are possible.

Again, in *Witte v. Whitney,* 37 Wn.2d 865, 226 P.2d 900 (1951), we held that, where, prior to an accident partly caused by a brake failure, the brakes seemed sluggish and operated with less than normal efficiency, their sudden failure made it a question for the jury to decide whether the deficiencies and abnormalities in the braking system previously observed would have put a person of ordinary prudence on notice that the brakes might fail.

Statutory law requires that all brakes on a motor vehicle be maintained in good working order. RCW 46.37-.360. Failure to keep them in good working order violates this statutory mandate and, therefore, constitutes negligence per se. *McCoy v. Courtney,* 25 Wn.2d. 956, 172 P.2d 596, 170 A.L.R. 603 (1946); and, similarly, as to a municipal ordinance, *Jacklin v. North Coast Transp. Co.,* 165 Wash. 236, 5 P.2d 325 (1931). If, without premonitory symptoms, the brakes suddenly fail and there is evidence that the defect whereof they failed was patent and noticeable, it then becomes a question of fact for the jury to decide whether the defect would have been discovered by the exercise of ordinary care and prudence. The operator of an

automobile is chargeable with notice of any defects that a reasonable inspection would disclose. *Eastman v. Silva,* 156 Wash. 613, 287 Pac. 656 (1930).

█ One must exercise reasonable care in utilizing the vehicle's equipment to prevent or avoid accidents and is, therefore, required to use the horn and emergency brakes when the situation, in the exercise of ordinary care and prudence, calls for their use. *Millhorn v. Donaldson Baking Co.,* 117 Ohio App. 501, 193 N.E.2d 88 (1961). And in holding that the driver was bound to know that in a car equipped with power brakes, the brakes would not function if the motor was not running, we have declared it the rule that an automobile driver is bound to know the operational limitations of his equipment. *Woods v. Goodson,* 55 Wn.2d 687, 349 P.2d 731 (1960).

Overwhelming evidence proved that the defect from which the brakes in the Blacklaw automobile suddenly failed was neither latent nor concealed. On the contrary, the scored, marked and abraded surface of the left front brake flex line, being visible to the naked eye, represented a patently dangerous defect in the braking system to anyone charged with knowledge of its function. Evidence of this palpable defect then raised a question for the jury to resolve as to whether the defendant owners had exercised reasonable care and prudence under the circumstances in inspecting or having others on their behalf inspect the brakes. Instructions 16 and 17, we think, properly complement each other on this point and instruction 17, when studied in the light of evidence proving a patent defect in the braking system, correctly stated the law and was free of reversible error.[3]

The other principal ground for appeal comes from the trial court's refusal to give defendants' requested instruction No. 4 on sudden emergency, which says:

---

[3]Instruction 17 seems to have one minor defect. It employs the phrase, "The law will not hear an automobile owner say," which, although introducing a proper statement, is argumentative and should be avoided.

An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in a position of peril and compelled to act instantly to avoid injury is not guilty of negligence if he makes such a choice as a reasonably prudent and careful person placed in such a position might make, even though he did not make the wisest choice.

Defendants cite a number of cases dealing with the emergency doctrine, all of which express the rule that, where an emergency arises not due to one's own negligence, he is entitled to the foregoing precautionary instruction. *Sage v. Northern Pac. Ry. Co.*, 62 Wn.2d 6, 380 P.2d 856 (1963); *Sandberg v. Spoelstra*, 46 Wn.2d 776, 285 P.2d 564 (1955); *Bergstrom v. Ove*, 39 Wn.2d 78, 234 P.2d 548 (1951); *Keller-her v. Porter*, 29 Wn.2d 650, 189 P.2d 223 (1948); and *Dupea v. Seattle*, 20 Wn.2d 285, 147 P.2d 272 (1944). They urge this instruction, too, under the rule that a party is entitled to have his theory of the case presented to the jury by proper instructions if his theory is supported by evidence. *Dabroe v. The Rhodes Co.*, 64 Wn.2d 431, 392 P.2d 317 (1964); *DeKoning v. Williams*, 47 Wn.2d 139, 286 P.2d 694 (1955). We adhere to the principles declared in these cases, but must view them in the light of the evidence to determine whether the sudden brake failure here created a situation warranting the emergency instruction.

Issues of reasonable care and prudence in operation of the car may be seen from Mrs. Blacklaw's admitted unfamiliarity with the emergency brake and her ignorance of a horn ring on the steering wheel. She testified that she had an approximate idea of the location of the emergency brake pedal, but was unable to use it because she had never used it before. She also testified that she did not sound her horn because she could not remove her hands from the wheel. But the evidence showed that the Cadillac was equipped with an emergency brake operable with the left foot and a horn ring or device by which the horn would be activated with the hands while both held the steering wheel.

Altogether plaintiff submitted substantial proof from which the jury could find several elements of negligence:

(1) The Blacklaws failed to exercise ordinary care and prudence in inspecting or causing inspection of their brake system and in seeing a patent readily appreciable and dangerous defect. (2) The Blacklaw automobile was not equipped with brakes in reasonably good working order as required by statute. (3) Mrs. Blacklaw approached the road crew at an excessive rate of speed, (4) failing to give reasonable heed to the traffic signs and devices placed on the road to warn her. (5) Mrs. Blacklaw failed to sound the horn when her brakes failed at a place approximately 400 feet before the point of impact; and (6) she neglected to use her emergency brake when the brakes failed at a point sufficiently in advance of the accident to let the emergency brake take effect. (7) She failed to keep her car under control so as to steer between the rear end of the truck and Mr. Curtis, a distance of more than 12 feet, and (8) failed to turn the car to the right and off the highway into a ditch in such a way as to avoid Mr. Curtis.

██ There comes an instant in nearly every accident when a change in course, a turn of the wheel, a swerve to the left or right, the blast of a horn, an increase or decrease in speed, a jamming on or releasing of the brakes—in short, the doing or failing to do of any one or more of many things —might avert an accident or lessen the injuries. That the idea of emergency inheres in nearly all automobile accidents does not in each case warrant the giving of an instruction on the subject. The emergency doctrine may be invoked only in the absence of negligence by the person claiming its benefits. *Enyeart v. Borgeson,* 60 Wn.2d 494, 374 P.2d 543 (1962).

Even in such instance, the existence of a legally defined emergency does not alter or diminish the standards of care imposed by law upon the actors. Unless statutes impose different standards, the test is and remains that of ordinary care under the circumstances. With or without an emergency instruction, the jury must determine what choice a reasonably prudent and careful person would have made in the same situation. The emergency instruction does no

more than remind the jury of this and cautions them not to hold the actors to a higher standard.

Since there was substantial evidence from which a jury could find that a person in the exercise of reasonable care and prudence, under the circumstances and conditions encountered by Mrs. Blacklaw, would have (1) earlier discovered the visibly scored, marked and dangerous left front brake flex line; (2) driven more slowly after seeing the three roadside caution signs notifying her that a road crew was ahead, or (3) sounded her horn after discovering the brake failure and (4) applied her emergency brake; (5) shifted into a lower driving gear when the car had slowed—by her testimony—to 30 miles per hour; (7) steered the Cadillac more closely to the rear of the truck and thus left several feet between the car and Mr. Curtis; or (8) turned to the right of the dirt piles and Mr. Curtis, off, across, or into a shallow ditch—any one of which remedial actions might have averted collision with Mr. Curtis —the case became one for application of the rules pertaining to ordinary care and prudence, free from conditioning by the sudden emergency instruction. The standards were, and remain, ordinary care and prudence under the circumstances and conditions then prevailing.

Other assignments of error not appearing to require discussion, the judgment is affirmed.

ROSELLINI, C. J., HILL and OTT, JJ., and BARNETT, J. Pro Tem., concur.