[Civ. No. 1019.   Fifth Dist.   Sept. 26, 1969.]

HOMER LEE RUSSELL, SR., et al., Cross-complainants and Appellants, v. GEORGE ROSE & COMPANY, INC., Cross-complainant and Appellant; INTERARMCO LIMITED, Cross-defendant and Respondent.

Stammer, McKnight, Barnum, Bailey & Barnett and Dean A. Bailey for Cross-complainants and Appellants.

Stutsman, Nagel, Ferrari & Cole and J. J. Nagel for Cross-complainant and Appellant.

McCormick, Barstow, Sheppard, Coyle &. Best and William B. Boone for Cross-defendant and Respondent.

STONE, P. J.—Benigno Reynozo purchased a used World War I rifle from an army surplus retailer, hereinafter called "Russell." The gun was defective and exploded the first time Reynozo fired it, injuring him. The defect, "excessive head space," was latent; only an expert could detect the four one-thousandths of an inch excess. The condition was aggravated by the presence of cosmaline, a preservative used at that time in the shipment of used armament.

Reynozo filed an action against three defendants, Russell, the retailer, George Rose & Company, Inc., the wholesaler (hereinafter referred to as "Rose"), and Interarmco Limited, an importer and wholesaler of arms. The manufacturer was not made a party to the action for the reason that before Interarmco bought the shipment of guns from a foreign government and imported them, the original bolts had been replaced with ones that did not fit properly. The record does not disclose who reconditioned the rifles.

Reynozo, the plaintiff consumer, recovered judgment in a jury trial, against the three defendants.

Appellant Russell, the retailer, cross-complained, in the original action, against his supplier, Rose, and against the importer, Interarmco, to recover by way of indemnity any amount that Reynozo might recover from Russell on the complaint. Rose, in turn, filed a cross-complaint against Interarmco for any amount it might be required to pay as a result of Reynozo's action.

In plaintiff's action for damages, the jury was instructed upon both the doctrine of strict liability and the law of war-

ranty. It is impossible to tell under which theory the jury held all three defendants liable as a general verdict was returned in favor of plaintiff, and no special verdicts were requested.

After the judgment was entered and each of the three defendants paid one-third thereof, the cross-complaints for indemnity were submitted, upon the record, to the trial judge who had heard the case.

On these appeals there is some discussion by counsel as to whether the jury based its verdict upon the theory of warranty or upon the doctrine of strict liability. This speculation is beside the point. Although the cross-complaints were submitted on the record of the plaintiff's case, the decision of the trial judge that liability rested upon the law of strict liability is tantamount to a judgment on a trial de novo, a judgment amply supported by the evidence. In the minute order for judgment, the judge said that each supplier was equally culpable and, by denying each a right to recover from the others, impliedly found that none of the defendants was entitled to indemnity from the others.

██ We think the court reached the right conclusion since under the doctrine of products liability a supplier, as contrasted with a manufacturer, is merely a link in the chain of distribution and his liablity is not dependent upon fault. As against his fellow suppliers, he is entitled to contribution which was accomplished voluntarily before the cross-complaints were tried; each defendant paid one-third of the judgment. On the other hand, a supplier cannot recover indemnity from another supplier in the chain of distribution in a case grounded solely upon products liability. Since the trial court found liability of each supplier to be grounded on products liability, indemnity will not lie. (See 57 Cal.L.Rev. 494, *Contribution and Indemnity*.)

Appellants urge that quite aside from products liability each is entitled to indemnity under the law of warranty. Russell asserts the record supports a finding there was both an express and an implied warranty of fitness by its predecessors in the line of supply, Rose, the wholesaler, and Interarmco, the importer. Rose asserts there was an express and an implied warranty of fitness by its supplier, Interarmco.

The minute order for judgment is vague upon the question of warranty, but the findings are clear enough. The trial judge found that neither Interarmco nor Rose made a written or an oral warranty of fitness, and that there was no implied

warranty of fitness for use or of the quality of the merchandise.

Both Russell and Rose contend there was an implied warranty of fitness for use, under former Civil Code section 1735 which was in effect at the time the case was tried. Section 1735 placed upon the buyer the burden of proving that he relied upon the seller's skill or judgment before there is an implied warranty of fitness for use. (1 Witkin, Summary of Cal. Law (7th ed. 1960) Sales, § 16, p. 505.) Both Russell and Rose assert that, the printing on Interarmco's invoice, "good, very good or better condition" constituted an express warranty. Russell also argues that an oral statement by the agent for Rose that the gun was in "good shooting condition" constituted an express warranty of fitness. (*Yuba Mfg. Co.* v. *Stone,* 39 Cal.App. 440 [179 P. 418].)

The trial court found that none of the parties intended to make an express or an implied warranty, and that none believed a warranty had been made by any of the distributors. The judge appeared to have been impressed by the fact Russell, the retailer, and Rose and Interarmco, the suppliers, were well aware of the risks in dealing in used military equipment. The gun was an imported, reconditioned, American-made World War I rifle, over 40 years old, originally sold to a foreign country; it had been used and thereafter reconditioned, by whom no one knows. In short, the seller, the party purportedly making the representations, did not have superior knowledge upon which the buyer relied. (See *Grinnell* v. *Charles Pfizer & Co.,* 274 Cal.App.2d 424, 440 [79 Cal.Rptr. 369].) Under these circumstances we cannot say the trial court erred in concluding that each supplier in the chain of distribution took his risk and relied on no one.

Appellants argue that a supplier distributing anything as potentially dangerous as a reconditioned gun impliedly warrants that it is safe to use regardless of its other qualities. It would seem at first blush that this social responsibility would overshadow the technicalities of the law of warranty discussed above. But it was the very difficulty in proving privity, knowledge and reliance to establish a warranty in the distribution of products that moved the courts to formulate the doctrine of products liability and impose liability without fault. Under the principle of strict liability each supplier who is a link in the chain of distribution may enforce contribution without proving any of the elements of war-

ranty. Indemnity cannot, as between suppliers and fellow links in the chain of distribution, be predicated upon the dangerous propensities of the product, whether patent or latent. To be made whole through indemnity the supplier must rely upon the law of warranty or contract. Here, the issue of warranty is a mixed question of law and fact, which the trial court decided against appellants.

Although there is evidence, as pointed out by appellants, that would support a finding of either an express or an implied warranty, the trial court did not share appellants' view of the evidence. ▮ It is well settled that we cannot reweigh the evidence or draw our own inferences from the record. In *Berniker* v. *Berniker*, 30 Cal.2d 439 [182 P.2d 557], the Supreme Court laid down principles governing an appeal of this character, in the following complete and concise statement at page 444: " . . . it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof."

The judgment is affirmed.

Gargano, J., concurred.

A petition for a rehearing was denied October 23, 1969, and the opinion was modified to read as printed above. The petitions of the cross-complainants and appellants and the cross-complainant and appellant for a hearing by the Supreme Court were denied November 19, 1969.