[No. 210-41460-3.   Division Three.   January 12, 1971.]

NORTHWESTERN MUTUAL INSURANCE COMPANY, *Appellant,* v. ARTHUR STROMME *et al., Respondents.*

*Hugh R. McGough* (of *Minnick, Hahner & Hubbard*), for appellant.

*Roger L. Olson* (of *Olson & Olson*), for respondent Stromme.

*John G. Bergmann* (of *Elvidge, Veblen, Tewell, Bergmann & Taylor*), for respondent General Motors Corporation.

MUNSON, J.—Plaintiff, Northwestern Mutual Insurance Company, appeals from an order dismissing an indemnity action for money plaintiff was required to pay for injuries caused by its insured in an accident on March 20, 1963. Defendants are the seller and manufacturer of an allegedly defective automobile which plaintiff contends was the primary cause of the accident. This case is a sequel to *Curtis v. Blacklaw*, 66 Wn.2d 484, 403 P.2d 358 (1965). The facts in that opinion were, with minor deviations, the same as presented before the trial court in the instant action and need not be restated.

Plaintiff assigns error to: (1) the granting of defendants' motion for dismissal at the close of plaintiff's case; (2) the exclusion of testimony by an expert witness of plaintiff; (3) the dismissal by pretrial order of plaintiff's action based on express or implied warranties.

As to the first assignment of error, plaintiff agrees there is generally no right of indemnity between joint tort-feasors, *Reefer Queen Co. v. Marine Constr. & Design Co.*, 73 Wn.2d 783, 440 P.2d 453 (1968); *Rufener v. Scott*, 46 Wn.2d 240, 280 P.2d 253 (1955); however, he seeks to come within the exception that indemnity may be allowed if the tort-feasors are not in pari delicto or equally at fault.

Plaintiff contends its insureds' liability in *Curtis v.*

*Blacklaw, supra,* was based *solely* on Mrs. Blacklaw driving a car with a defective brake system. Consequently, plaintiff argues its insureds' liability for the accident and resulting injury was at most passive, or secondary, when contrasted with the active, or primary, liability of defendants for placing the Blacklaws' defective automobile on the market. The trial court disagreed. It found as a matter of law that Mrs. Blacklaw's liability was not secondary, but primary, and that plaintiff's cause of action in this case disappeared with that determination. We agree.

As was observed in *Curtis v. Blacklaw, supra,* at 491-92:

[P]laintiff submitted substantial proof from which the jury could find several elements of negligence: (1) The Blacklaws failed to exercise ordinary care and prudence in inspecting or causing inspection of their brake system and in seeing a patent readily appreciable and dangerous defect. (2) The Blacklaw automobile was not equipped with brakes in reasonably good working order as required by statute. (3) Mrs. Blacklaw approached the road crew at an excessive rate of speed, (4) failing to give reasonable heed to the traffic signs and devices placed on the road to warn her. (5) Mrs. Blacklaw failed to sound the horn when her brakes failed at a place approximately 400 feet before the point of impact; and (6) she neglected to use her emergency brake when the brakes failed at a point sufficiently in advance of the accident to let the emergency brake take effect. (7) She failed to keep her car under control so as to steer between the rear end of the truck and Mr. Curtis, a distance of more than 12 feet, and (8) failed to turn the car to the right and off the highway into a ditch in such a way as to avoid Mr. Curtis.

Under the facts as presented in this case, specifically (5) and (6) alluded to in the above quotation, we believe Mrs. Blacklaw's negligence imposed upon her a primary liability for the damages suffered. Therefore, plaintiff's indemnification action is barred.[1]

---

[1]The case relied upon by plaintiff, *Allied Mut. Cas. Corp. v. General Motors Corp.,* 279 F.2d 455 (10th Cir. 1960), to show defendant's primary liability is distinguishable in that: (1) Summary judgment on the pleadings was granted by the trial court against the insurance

■ In conjunction with this assignment of error, plaintiff contends the doctrine of strict liability imposes a sufficient degree of liability on defendants for injury to the user of its product to establish the primary-secondary relationship between tort-feasors required to invoke the exception to the indemnity prohibition rule. Assuming arguendo that there may be strict liability imposed upon defendants for injuries suffered by the user of a defective product in such a situation,[2] this does not diminish the quantum, or change the character, of liability attributable to plaintiff's insured.

Washington's recent adoption of strict liability as a basis for tort action against a manufacturer[3] does not, of itself, raise the tort-feasor's liability thereunder to a higher plateau or degree than the user's liability which stems from the use of the product causing the injury; nor does it change our indemnity law pertaining to joint tort-feasors. The facts surrounding the incident giving rise to the initial cause of action and the duties breached by the tort-feasors determine whether indemnity will be permitted, not the theory upon which their liability may be based.[4] We believe *Rufener v. Scott, supra,* contains one of the clearer statements of the law[5] applicable to this issue wherein it states at page 243, quoting from 27 Am. Jur. *Indemnity* § 18:

company; (2) the sole theory upon which the insured was liable in this case was the operation of a motor vehicle in contravention of a Missouri statute which required motor vehicles to have two good working brake systems; (3) Missouri law allowed a party in violation of the statute to introduce evidence that "he was fully without fault and could not possibly have complied with the statutory requirements"; and (4) the net effect of the opinion was to remand the case for trial in light of the factual questions raised by (3).

[2] See *Liberty Mut. Ins. Co. v. American Motors Corp.,* 2 CCH Products Liability Reports § 6452 (N.Y. S.Ct., Oct. 1970).

[3] *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969). The applicability of this theory to a retailer has not, at this writing, been decided by our Supreme Court.

[4] Notes, *The Right to Indemnity in Products Liability Cases,* 1964 U. Ill. L. F., 614 *et seq.* (1970).

[5] See also *Liberty Mut. Ins. Co. v. American Motors Corp., supra; Halligan v. Shulman,* 31 Ill. App. 2d 168, 175 N.E.2d 590 (1961); *Singleton v. Bishop,* 19 App. Div. 2d 595, 240 N.Y.S.2d 384 (1963);

". . . one *constructively liable* for a tort is generally held entitled to indemnity from the actual wrongdoer, *regardless* of whether the liability is imposed on the person seeking indemnity by statute or by rule of . . . law, . . ."

(Italics ours.) In other words, if the tortious conduct of the wrongdoer, regardless of the underlying theory of liability, does nothing more than furnish a condition through which a subsequent independent "act" of a co-wrongdoer occurs, the tort-feasors are not in pari delicto and indemnity may be allowed.[6] Conversely, if each of the tort-feasors' acts although independent concur in establishing the basis for the actual liability, they are in pari delicto and indemnity will not be allowed.

In the instant appeal plaintiff's cause was dismissed at the close of its case. The trial court found as a matter of law that Mrs. Blacklaw was liable to Curtis for (1) operating an automobile with a defective brake system, (2) failing to sound her horn to warn Curtis of her approach, and (3) failing to apply her emergency brake. If only (1) had been the basis for the trial court's decision we would be compelled to reverse and remand the case for a factual determination of other possible sources of Mrs. Blacklaw's liability.[7] The actual wrongdoer in such a situation could be

---

*Russell v. George Rose & Co.,* 276 Cal. App. 2d 456, 80 Cal. Rptr. 755 (1969); *McClish v. Niagara Machine & Tool Works,* 266 F. Supp. 987 (S.D. Ind. 1967); *Kenyon v. F. M. C. Corp.,* 176 N.W.2d 69 (Minn. 1970); *Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 104 N.W.2d 843 (1960); *Jacobs v. General Accident Fire & Life Assurance Corp.,* 14 Wis. 2d 1, 109 N.W.2d 462 (1961).

[6]An example of the unimportance of the theory of liability is found in *Farr v. Armstrong Rubber Co.,* 179 N.W.2d 64 (Minn. 1970) wherein a defendant retailer was found liable to plaintiff (purchaser) on alternative grounds of breach of warranty and/or strict liability. Yet indemnity was allowed from a codefendant manufacturer who was also strictly liable to plaintiff since the former did not perpetrate an active wrong, *i.e.,* it could not have found the defect in the product which caused the injury and was under no duty to remedy a latent defect in the product prior to sale.

[7]*Cf.* quotation herein from *Curtis v. Blacklaw,* 66 Wn.2d 484, 403 P.2d 358 (1965).

the retailer or the manufacturer who placed the defective automobile in her possession. *Rufener v. Scott*, 46 Wn.2d 240, 280 P.2d 253 (1955). However, the presence of (2) and (3) establish actual liability in addition to her constructive fault. Thus, her tortious conduct concurred with defendants' in producing the injury and this concurrence precludes indemnity.

As to the second assignment of error, on November 22, 1967 General Motors, by interrogatories to plaintiff, requested the names of witnesses with information regarding the case. The interrogatories were answered March 4, 1968, listing 23 witnesses. On September 9, 1968 plaintiff served an amended answer to the interrogatories but did not amend the answer pertaining to the witness list. During the first week of November 1968 plaintiff contacted Professor J. W. Anderson of the University of Washington for possible use as an expert witness. When Professor Anderson was called at trial General Motors objected, claiming his name had not been furnished in answer to the interrogatories propounded. The court ruled that the interrogatories were continuing, although they did not purport to be so, and did not allow Professor Anderson to testify. We disagree.

There is nothing in CR 33, or any interpretation of that rule by our court, to give rise to a belief that an interrogatory is continuing unless it is specified to be so. Notwithstanding some interpretations of the federal rules to the contrary[8], we hold that until there is a change in the present wording of CR 33, interrogatories proposed thereunder are not continuing unless they are specifically so stated.[9] Therefore, the testimony of Professor Anderson, the gist of which is before us in plaintiff's offer of proof, should have been admitted. However, it did not go to the issue of indemnity, *i.e.*, the sounding of the horn or the

[8] See 4 J. Moore, Federal Practice § 26.81, at 26-570 to 26-574.

[9] *Sather v. Lindahl*, 43 Wn.2d 463, 261 P.2d 682 (1953), cited by defendant General Motors, is distinguishable in that the deponent in that case knew of the existence of the witness at the time the question was propounded to him and failed to disclose his identity. Such is not the case here.

using of the emergency brake and, therefore, its exclusion was not reversible error.

Plaintiff's third assignment of error relates to dismissal by the trial court of that portion of its case based upon warranty theory. We agree with the trial court, *Nelson v. Sponberg*, 51 Wn.2d 371, 318 P.2d 951 (1957), controls this aspect of plaintiff's claim.

Judgment affirmed.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied February 19, 1971.

Review denied by Supreme Court March 8, 1971.