GENERAL MOTORS CORPORATION,
Petitioner,

v.

Curtis Lee SIMMONS et al.,
Respondents.

No. B–6604.

Supreme Court of Texas.

Nov. 9, 1977.

Rehearing Denied Dec. 14, 1977.

Vinson, Elkins, Searls, Connally & Smith, Harry M. Reasoner, Eleanor Swift Glass and Alan Schulman, Houston, Gus M. Hodges, Austin, Frazier F. Hilder, Thomas W. Watkins and Diane L. Kaye, Detroit, Mich., for petitioner.

Jamail & Gano, Joseph D. Jamail Jr., S. Gus Kolius and Robert F. Stein, Baker & Botts, Finis E. Cowan and Richard Lee Josephson, Houston, for respondents.

POPE, Justice.

Curtis Lee Simmons sued General Motors alleging actions in strict liability and negligence. He pleaded that the defective glass in his vehicle exploded causing permanent damage to his eyes. Simmons also joined Feld Truck Leasing Corporation and its employee driver, Hestle Andrew Johnston, alleging that Johnston was negligent in driving the Feld Truck into Simmons' car. Feld and Johnston sought indemnity against General Motors and General Motors prayed for contribution from Feld and Johnston. Prior to the trial, plaintiff Simmons made a settlement with Feld and Johnston, but they remained in the case as named defendants. The trial court rendered judgment on a jury verdict against General Motors for 1,000,000 dollars. The court of civil appeals reformed the judgment by granting General Motors contribution from Johnston and Feld and rendering judgment for the plaintiff for half a million dollars. 545 S.W.2d 502. Two primary questions are presented. General Motors seeks a reversal because the trial court refused to admit into evidence the terms of the "Mary Carter" settlement agreement that Simmons made with Feld and Johnston before trial. Simmons on the other hand says that Feld and Johnston should have been fully indemnified and that he should have a judgment for the entire million dollars against General Motors. We reverse the judgment of the courts below and remand the cause for another trial.

### The "Mary Carter" Agreement

Hestle Andrew Johnston, Feld's employee, failed to stop at a traffic signal and

drove Feld's truck into the left front door of Simmons' 1962 Chevrolet. The impact bent the frame of the door on Simmons' car, causing the laminated glass in the car window to explode into Simmons' eyes and blind him.

Prior to the trial, Simmons entered into a covenant not to sue Feld and Johnston and an indemnity agreement with those defendants. The agreement recited that Feld and Johnston had paid Simmons a sum of money, the amount of which this record does not disclose. Simmons agreed that he would not sue Feld and Johnston, and he agreed also to pay Feld fifty percent of each dollar Simmons recovered against General Motors until Feld received 200,000 dollars. At trial, General Motors tried to show during opening statement, on cross-examination and in argument the nature of the agreement between Simmons and Feld and Johnston, but the trial court refused to permit the disclosure of the agreement.

■ The traditional Texas rule is that settlement agreements between the plaintiff and a co-defendant should be excluded from the jury. A contrary rule would frustrate the policy favoring the settlement of lawsuits. *McGuire v. Commercial Union Insurance Co.*, 431 S.W.2d 347 (Tex.1968). The plaintiff Simmons and also the settling defendants, Feld and Johnston, strongly insist that there was no harm in excluding the evidence or explanation about the agreement since it was made clear to General Motors, the court and the jury that Feld and Johnston were not adverse to Simmons and were adverse to General Motors. In fact the attorneys for Simmons, Feld and Johnston, and General Motors each explained to the jury that Simmons, Feld and Johnston were allies against General Motors. From this, Simmons says that there was no misunderstanding and no harm to General Motors.

■ The judgments of the courts below must be reversed by reason of the exclusion of General Motors' efforts to disclose the real nature of the settlement agreement. It was not an ordinary settlement agreement. By its terms, Feld acquired a direct financial interest in Simmons' lawsuit. The financial interest of parties and witnesses in the success of a party is a proper subject of disclosure by direct evidence or cross-examination. While the alignment of the adversaries was disclosed, the jury did not know the extent of Feld's interest or that it was a financial interest which depended upon the amount of the judgment for Simmons. Feld's direct and substantial monetary interest in the success of Simmons' action against General Motors comes from this part of the contractual agreement Feld had with Simmons:

3. In the event the parties to this agreement are successful in their prosecution of their causes of action against General Motors and a judgment is rendered against General Motors for money damages, and thereafter paid, Feld Truck Leasing Corporation will be entitled to and will receive from the proceeds of such judgment fifty (50%) percent of each dollar recovered, up to $200,000.00. In no event shall Feld Truck Leasing Corporation be entitled to recover under this agreement more than $200,000.00. All sums not attributable to Feld Truck Leasing Corporation under this agreement shall be payable to and the property of plaintiff, Curtis Lee Simmons and his attorneys.

4. Both Curtis Lee Simmons and Feld Truck Leasing Corporation and Hestle Andrew Johnston, Jr. shall bear their own attorneys fees and litigation expense and neither party shall have any financial responsibility for the attorneys fees or litigation expense incurred by the other party.

5. No settlement of the causes of action against General Motors will be effected without the joint consent of all parties to this agreement.

Agreements with a settling defendant who remains a party at the trial and retains

a financial stake in the plaintiff's recovery have been called "Mary Carter" agreements since the 1967 Florida decision of *Booth v. Mary Carter Paint Co.*, 202 So.2d 8 (Fla. App.1967). Some courts have wholly voided the agreements as against public policy. *Lum v. Stinnett*, 87 Nev. 402, 488 P.2d 347 (1971); *Trampe v. Wisconsin Telephone Co.*, 214 Wis. 210, 252 N.W. 675 (1934). There is no contention in this case that the settlement agreement was void. Most courts that have addressed the issue, while not declaring these agreements void, have permitted the disclosure of the contracts to the jury when offered by a nonsettling defendant. *See, e. g., Hemet Dodge v. Gryder*, 23 Ariz.App. 523, 534 P.2d 454 (1975); *Ward v. Ochoa*, 284 So.2d 385 (Fla.1973); *Gatto v. Walgreen Drug Co.*, 61 Ill.2d 513, 337 N.E.2d 23 (1975); *Burkett v. Crulo Trucking Co.*, 355 N.E.2d 253 (Ind.App.1976); *Grillo v. Burke's Paint Co.*, 275 Or. 421, 551 P.2d 449 (1976); *but see Klotz v. Lee*, 36 N.J.Super. 6, 114 A.2d 746 (1955), *appeal dismissed*, 21 N.J. 148, 121 A.2d 369 (1956).

■ The Illinois Supreme Court wrote in *Reese v. Chicago, B. & Q. R.R. Co.*, 55 Ill.2d 356, 303 N.E.2d 382, 387 (1973), that "the use of loan agreements[1] tends to undermine the adversary nature and integrity of the proceedings against the remaining defendant." *See also Kuhns v. Fenton*, 288 So.2d 253 (Fla.1973); *Ward v. Ochoa*, 284 So.2d 387 (Fla.1973); *Imperial Elevator Co. v. Cohen*, 311 So.2d 732 (Fla.App.1975); *General Portland Land Development Co. v. Stevens*, 291 So.2d 250 (Fla.App.1974); *Gatto v. Walgreen Drug Co.*, 61 Ill.2d 513, 337 N.E.2d 23 (1975); Michael, *"Mary Carter" Agreements in Illinois*, 64 Ill.B.J. 514 (1976).

In *Ward v. Ochoa, supra*, the Florida Supreme Court said:

> Secrecy is the essence of such an arrangement, because the court or jury as trier of the facts, if apprised of this, would likely weigh differently the *testimony and conduct* of the signing defendant as related to the non-signing defendants. By painting a gruesome testimonial picture of the other defendant's misconduct or, in some cases, by admissions against himself and the other defendants, he could diminish or eliminate his own liability by use of the secret "Mary Carter Agreement."

By analogy, there is another strong policy in Texas that one may not develop testimony that a party's loss was covered by insurance since that fact is not considered material to the issue of liability. *Texas Co. v. Betterton*, 126 Tex. 359, 88 S.W.2d 1039 (1936); *Page v. Thomas*, 123 Tex. 368, 71 S.W.2d 234 (1934). When, however, as in another case, an agent of an insurance company that was the real party at interest took the witness stand under the semblance of being a disinterested witness to testify against the opposing party, his connection with the insurer was not exempt from cross-examination. *Aguilera v. Reynolds Well Service*, 234 S.W.2d 282 (Tex.Civ.App. 1950, writ ref'd). The court in *Aguilera* quoted the general rule that interest, bias, or motive on the part of a witness may be elicited on cross-examination even though it incidentally discloses that the defendant is protected by insurance.

■ Feld stood to recover one out of every two dollars from the first 400,000 dollars of a judgment against General Mo-

---

**1.** A "loan agreement" is one form of a Mary Carter-type settlement agreement. It is cast in the form of a loan that is to be repaid only if and to the proportionate extent that the plaintiff recovers against the other defendant. The "loan" is repaid out of the plaintiff's recovery against the other defendant. *See Burkett v. Crulo Trucking Co.*, 355 N.E.2d 253, 258 (Ind. App.1976); Annot., 62 A.L.R.3d 1111, 1113 (1975). As the Supreme Court of Oregon has said:

> Private agreements which constitute a partial settlement of a dispute between a plaintiff and two or more defendants and which retain the settling defendant as a party at the trial have become known as "Mary Carter agreements." Such agreements may take on various forms depending upon the factual setting in an individual case and the underlying law in the particular jurisdiction. *Grillo v. Burke's Paint Co.*, 275 Or. 421, 551 P.2d 449, 452 (1976).

tors. That kind of interest is a proper subject of cross-examination and proof. *Trinity County Lumber Co. v. Denham*, 88 Tex. 203, 30 S.W. 856 (1895); *Robertson Tank Lines, Inc. v. Watson*, 491 S.W.2d 706, 709 (Tex.Civ.App.1973, writ ref'd n. r. e.). The exclusion of the evidence was harmful error and the judgment must be reversed for that reason.

*Simmons' (Plaintiff) Claim for Indemnity*

Plaintiff Simmons has appealed from that part of the judgment of the court of civil appeals which denied indemnification in favor of Feld and Johnston against General Motors. That court reduced the judgment by one-half because Feld and Johnston had settled with the plaintiff. *See Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964).

The jury found that the glass in the door of Simmons' car was defective and that the defective product was a producing cause and also the sole producing cause of Simmons' eye injuries. The jury also found that General Motors was negligent, and that its negligence was the sole proximate cause of Simmons' injuries. Upon those findings Simmons insists that the trial court correctly denied General Motors' claim for contribution.

■ We agree with the holding of the court of civil appeals that, as a matter of law, the breaking defective glass was not the sole cause of the injuries. That court detailed the basis for its holding. Co-defendants Feld and Johnston filed an amended pleading, after making their settlement with Simmons. They confessed their liability to Simmons for damages. They stipulated that the manner in which Johnston drove his truck into the side of the Simmons' vehicle was negligence. In view of those pleadings and admissions, as a matter of law, General Motors was a joint tortfeasor, but its negligence was not the sole cause of Simmons' injuries. *C. H. Leavell & Co. v. Vilbig Bros., Inc.*, 160 Tex. 600, 335 S.W.2d 211, 213 (1960).

Indemnity has been defined as "the payment of all of plaintiff's damage by one tortfeasor to another tortfeasor who has paid it to the plaintiff." Hodges, *Contribution and Indemnity Among Tortfeasors*, 26 Texas L.Rev. 150, 151 (1947). Contribution is "the payment by each tortfeasor of his proportionate share of the plaintiff's damages to any other tortfeasor who has paid more than his proportionate part." Hodges, *supra.*

In *Strakos v. Gehring*, 360 S.W.2d 787 (Tex.1962), this court recognized that the method for determining whether one tortfeasor is entitled to indemnification from another tortfeasor may depend upon the nature of the case. *Wheeler v. Glazer*, 137 Tex. 341, 153 S.W.2d 449 (1941), was decided upon the basis of the different qualities of negligence, that is, a very high degree of care on the part of one tortfeasor and ordinary care by the other. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1951), turned upon the breach of a duty which existed between the two tortfeasors. *City of San Antonio v. Smith*, 94 Tex. 266, 59 S.W. 1109 (1900), accorded indemnity in favor of the tortfeasor who was only vicariously liable by operation of the law. Then in *Austin Road Co. v. Pope*, 147 Tex. 430, 216 S.W.2d 563 (1949), this court observed that in most of the indemnity cases, one tortfeasor had breached a duty which he owed to his co-tortfeasor and to the injured plaintiff. Although both tortfeasors are liable to the injured plaintiff, the court said, as between themselves the blameless should be allowed indemnity. The court then stated this rule: "In order to determine whether the loss should be shifted from one tortfeasor to another the proper approach is to consider the one seeking indemnity as though he were a plaintiff suing the other in tort, and then determine whether such a one as plaintiff, though guilty of a wrong against a third person, is nevertheless entitled to recover against his co-tortfeasor." The several approaches to the decision about indemnification are helpful, but it is perhaps not possible to state a single all-in-

clusive one, since the variety of duties and situations is great. An earlier standard is now considered unsound. It was the one which tried to distinguish active and passive negligence.

When we view Feld as the plaintiff in an imagined suit against General Motors, we have the Feld vehicle, driven by Johnston, running into the side of the Simmons' car, causing the defective General Motors' glass to scatter into slivers inside the Simmons' car. Feld's damage against General Motors would have to be the liability he incurred by reason of Simmons' injuries. Feld's action would not be for any physical damages Feld, Johnston or their property sustained; it would be only for the liability to Simmons that they incurred. *Cf. Nobility Homes v. Shivers*, 557 S.W.2d 77 (Tex. 1977).

We ground our decision upon Section 402A of the Restatement Second of Torts. This court has pressed the manufacturer's strict non-privity liability to the outer limits of Section 402A. We have held that the manufacturer owes a duty to the user or consumer or to his property. *Franklin Serum Co. v. Hoover & Son*, 418 S.W.2d 482 (Tex.1967); *Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779 (Tex.1967). We then expanded that duty to include as a "user or consumer or . . . his property" a third person who also suffered physical injury to his person or property. *Darryl v. Ford Motor Company*, 440 S.W.2d 630 (Tex.1969).

Section 402A and our decisions, however, have limited the seller's liability to the terms of the Restatement Rule which is "for physical harm thereby caused . . ." Feld and Johnston make no claim that they suffered physical harm. To extend the duty to include *liability* to others would mean that in all cases the seller or manufacturer is subjected to indemnity without regard to the independent torts of others. *See Chamberlain v. Carborundum Co.*, 485 F.2d 31, 34 (3d Cir. 1973); *Walters v. Hiab*

*Hydraulics, Inc.*, 356 F.Supp. 1000 (N.D.Pa. 1973); *Automobile Club Ins. Co. v. Toyota Motor Sales*, 166 Mont. 221, 531 P.2d 1337 (1975); *Northwestern Mutual Ins. Co. v. Stromme*, 4 Wash.App. 85, 479 P.2d 554 (1971).

Simmons relies upon *Heil Co. v. Grant*, 534 S.W.2d 916 (Tex.Civ.App.1976, writ ref'd n. r. e.), for his insistence that Feld and Johnston should be indemnified by General Motors. In *Grant*, the plaintiff's decedent, James Grant, was repairing a dump truck owned by Vernon Grant. The bed of the truck had been raised by means of the hoist mechanism. While James Grant was beneath the bed, a cable was tripped, causing the bed to fall on and kill him. James Grant's wife and children sued Heil Company, the manufacturer, in strict liability and Heil impleaded Vernon Grant, the decedent's brother who owned the truck and was assisting James in making repairs. Heil urged that Vernon was negligent in permitting his brother to work beneath the raised bed and claimed contribution and indemnity. The court of civil appeals held that even if the brother, Vernon, was negligent toward the deceased, Vernon was entitled to indemnity from Heil, the manufacturer, because "defective design constituted a breach of the Heil Company's duty to both Vernon Grant and [the] Decedent." Our consideration of *Heil Co. v. Grant*, which we refused, no reversible error, did not include a review of the indemnity or contribution questions. The only points preserved for review concerned the exclusion of evidence and the defense of involuntary assumption of risk. Vernon Grant, to whom the court of civil appeals granted indemnity against Heil Company, was the owner, user and consumer of the truck. That situation is more analogous to the case of an innocent retailer who distributes the manufacturer's defective product. Though strictly liable to an injured plaintiff, the retailer has been granted indemnity against the manufacturer when he is ignorant of a latent defect not reasonably discoverable. *Roberts v. Richland Mfg. Co.*, 260 F.Supp.

274 (W.D.Mich.1966); *Hughes Provision Co. v. La Mear Poultry & Egg Co.*, 242 S.W.2d 285 (Mo.App.1951); 3 L. Frumer and M. Friedman, Products Liability § 44.02[3] (1970 ed.). This is another group of cases in which indemnity is approached from a different point of view. In such cases where negligence and a product defect jointly cause third party injury, whether the negligent tortfeasor knew or should have known about the defect, *Essex Wire Corp. v. Salt River Project Agricultural Improvement & Power Dist.*, 9 Ariz.App. 295, 451 P.2d 653 (1969); *Allied Mutual Casualty Corp. v. General Motors Corp.*, 279 F.2d 455 (10th Cir. 1960), and whether some harm would independently result from the negligence, *Essex Wire Corp. v. Salt River Project Agricultural Improvement & Power Dist.*, supra; *Schuster v. Steedley*, 406 S.W.2d 387 (Ky.1966); *Kenyon v. F. M. C. Corp.*, 286 Minn. 283, 176 N.W.2d 69 (1970), are factors influencing the award of indemnity. As stated above, indemnity was not the question presented to this court in *Heil* but, assuming the fact that Vernon Grant did not know about the defect, the case was correctly decided.

We refused the application for writ of error, no reversible error, in *South Austin Drive-In Theatre v. Thomison*, 421 S.W.2d 933 (Tex.Civ.App.1967, writ ref'd n. r. e.). The case was factually similar to *Heil*, but it held the manufacturer was entitled to contribution. The injured plaintiff sued the manufacturer of the riding-type power mower for negligent design and the employer of the grounds keeper who negligently drove the power mower. The employer cross-acted for indemnity, arguing that the manufacturer had breached a duty to the user to supply a non-defective product and that the duty owed by the manufacturer to the injured boy was of a higher order than ordinary negligence. The *Thomison* court held that the "general duty" breached by the manufacturer to the user was not the type contemplated by *Austin Road Co. v. Pope, supra,* and that the higher level of duty analysis did not apply. Accordingly, the employer was denied indemnity against the manufacturer. While *South Austin Drive-In Theatre v. Thomison* was decided on negligence grounds, we see no reason that a manufacturer found strictly liable under the lesser standards of proof of Section 402A should be more culpable than the negligent manufacturer in *Thomison*.

We approve the judgment of the court of civil appeals below which denied indemnification against General Motors.

■ There is still the problem of contribution. This case arose on January 3, 1972, prior to the effective date of Article 2212a [2] which treats contribution among negligent

2. Art. 2212a. Comparative negligence; contribution among joint tortfeasors

Modified comparative negligence

Section 1. Contributory negligence shall not bar recovery in an action by any person or party or the legal representative of any person or party to recover damages for negligence resulting in death or injury to persons or property if such negligence is not greater than the negligence of the person or party or persons or parties against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person or party recovering.

Contribution among joint tort-feasors

Sec. 2. (a) In this section:

(1) "Claimant" means any party seeking relief, whether he is a plaintiff, counterclaimant, or crossclaimant.

(2) "Defendant" includes any party from whom a claimant seeks relief.

(b) In a case in which there is more than one defendant, and the claimant's negligence does not exceed the total negligence of all defendants, contribution to the damages awarded to the claimant shall be in proportion to the percentage of negligence attributable to each defendant.

(c) Each defendant is jointly and severally liable for the entire amount of the judgment awarded the claimant, except that a defendant whose negligence is less than that of the claimant is liable to the claimant only for that portion of the judgment which represents the percentage of negligence attributable to him.

(d) If an alleged joint tort-feasor pays an amount to a claimant in settlement, but is never joined as a party defendant, or having been joined, is dismissed or nonsuited after

tortfeasors. Acts 1973, 63rd Leg., p. 41, ch. 28, sec. 4. That article, when applicable, prevails over Article 2212.[3] There are jury findings in this case that General Motors was negligent and also that General Motors was strictly liable. Feld's admissions establish its negligence as a matter of law.

Article 2212a, which is not here applicable, apportions the damages among the several tortfeasors upon principles of comparative negligence. The article deals specifically with negligence, and it nowhere uses the term "strict liability." *See* subsections 2(b), (c), (d), and (e), Art. 2212a. Article 2212, on the other hand speaks not about negligence, but about torts. Strict liability is a tort. As stated in Comment "m" of Section 402A, "The basis of liability is purely one of tort." It follows, therefore, that this case is governed by Article 2212 and is still controlled by *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964), even though the comparative negligence

statute, Article 2212a, has preempted the allocation of liability among negligent tortfeasors controlled by that statute. *See*, Keeton, *Annual Survey of Texas Law, Torts*, 28 Sw.L.J. 1, 8 (1974).

■ This case is relatively simple in our application of Article 2212 and the division of damages for the two sets of defendants. We observe, however, that the system of comparative negligence and the apportionment of damages among negligent tortfeasors under Article 2212a is different from the division of damages among negligent and strictly liable tortfeasors under Article 2212. The present state of the statutory law permits apportioning contribution upon comparisons of negligent conduct among negligent tortfeasors. It does not provide any mechanism for comparing the causative fault or percentage causation of a strictly liable manufacturer with the negligent conduct of a negligent co-defendant. Article 2212a and the comparative causa-

settlement with the claimant (for which reason the existence and amount of his negligence are not submitted to the jury), each defendant is entitled to deduct from the amount for which he is liable to the claimant a percentage of the amount of the settlement based on the relationship the defendant's own negligence bears to the total negligence of all defendants.

(e) If an alleged joint tort-feasor makes a settlement with a claimant but nevertheless is joined as a party defendant at the time of the submission of the case to the jury (so that the existence and amount of his negligence are submitted to the jury) and his percentage of negligence is found by the jury, the settlement is a complete release of the *portion of the judgment attributable to the* percentage of negligence found on the part of that joint tort-feasor.

(f) If the application of the rules contained in Subsections (a) through (e) of *this section* results in two claimants being liable to each other in damages, the claimant who is liable for the greater amount is entitled to a credit toward his liability in the amount of damages owed him by the other claimant.

(g) All claims for contribution between named defendants in the primary suit shall be determined in the primary suit, except that a named defendant may proceed against a person not a party to the primary suit who has not effected a settlement with the claimant.

(h) This section prevails over Article 2212, Revised Civil Statutes of Texas, 1925, and all other laws to the extent of any conflict. Acts 1973, 63rd Leg., p. 41, ch. 28, §§ 1, 2, eff. Sept. 1, 1973.

All statutory references herein are to Vernon's Texas Civil Statutes.

3. Art. 2212. Contribution between tort feasors

Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency. Acts 1917, p. 360.

tion advanced in *General Motors Corp. v. Hopkins*, 548 S.W.2d 344 (Tex.1977), portend problems which may retard the orderly trial of personal injury and property damage cases. This court respectfully invites further legislative study and amendments of Articles 2212a and 2212.

The judgments of the courts below are reversed, and the cause is remanded for another trial.

Dissenting opinion by SAM D. JOHNSON, J., joined by McGEE, J.

SAM D. JOHNSON, Justice, dissenting.

This writer, in dissenting, would adopt the opinion of the court of civil appeals. 545 S.W.2d 502.

McGEE, J., joins in this dissent.