**E. R. SQUIBB & SONS, INC., Appellant,**

v.

**Lucille HEFLIN and Helen Heflin, Appellees.**

**No. 8195.**

Court of Civil Appeals of Texas, Beaumont.

Feb. 8, 1979.

Motion for Rehearing Overruled March 8, 1979.

Norman J. Riedmeuller and Tom Alexander, Houston, for appellant Squibb.

Rodney V. Steinburg and David H. Burrow, Houston, for appellees.

DIES, Chief Justice.

On February 1, 1971, Emmett D. Heflin was given a myelogram and a discogram in Hermann Hospital, Houston. Shortly after these procedures he went into convulsions and died about three hours later. His widow, Lucille Heflin, and daughter, Helen Heflin, as plaintiffs below, sued E. R. Squibb & Sons, Inc. (and others not party to this appeal), defendants below. Trial was to a jury, following which judgment was given plaintiffs from which defendant brings this appeal.

Defendant's first two points contend there was no or insufficient evidence to support the finding in Special Issue No. One. In Special Issue No. One the jury found that as a result of the discogram performed by Dr. Reeve Renografin-60 entered the subarachnoid space of E. D. Heflin.

Before addressing these points, it is necessary to give a brief explanation of the terms involved. The subarachnoid space is that space next to and which surrounds the spinal canal. It is filled with a liquid and "bathes" the spinal canal. Between the vertebrae are "discs" which serve as shock absorbers for the spinal column. Prior to the procedures described herein, the deceased had had all or almost all of the discs removed at the L3 level. Continuing to have problems, the procedures—myelography and discography—were recommended to try and ascertain the problem.

In a myelogram, a pantopaque with an oil base is injected into the spinal canal. The pantopaque shows on x-ray. In the discogram, Renografin-60, manufactured by defendant, was intended to be injected only into the intervertebral disc itself, not into the subarachnoid space.

In passing on a no evidence point, we only consider the evidence and inferences therefrom which tend to support the verdict and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). A contention

that the evidence is insufficient directs us to all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Dr. John D. Reeve, a radiologist who performed the discogram, testified, "I know that I put the needle where it was supposed to be. It was not put in the subarachnoid space period. The needle was not put there. It traversed. It went where it was supposed to be." He used x-ray and fluoroscopy to determine if the needle was in proper position. We believe the jury was entitled to accept this testimony and overrule these contentions.

Defendant's next two points urge there was no or insufficient evidence to support the jury's answer to Special Issue No. 6, or that the answer is manifestly unjust.

In Special Issue No. 3 the jury had found that prior to the occasion in question, defendant failed to warn Dr. Reeve that during the procedure of injecting Renografin-60 in performance of a discogram, some of the product might get into the subarachnoid space of the patient and cause convulsions and death. And in Special Issue No. 6 such failure to warn was a producing cause of the injuries and death of E. D. Heflin.

Defendant makes the same contentions concerning Special Issue No. 8, which found that the negligence (in failure to warn) was a proximate cause of Heflin's death. Since these points of error are closely related, they will be discussed together.

The evidence shows that the pantopaque injected into the spinal canal during myelography is seldom toxic. On the other hand, Renografin-60 in the spinal canal is extremely toxic and dangerous, and this was known by the defendant. A doctor on defendant's staff testified defendant had tested Renografin-60 in the spinal canal of animals and "some if not all" had died convulsively as Heflin. Dr. Reeve and Dr. James E. Butler, the treating orthopedist, gave as the producing cause of Heflin's death the Renografin-60. Dr. Reeve felt it had somehow gotten into Heflin's subarachnoid space and said he would not have used

it if the insert in the Renografin packet had warned of its danger in this respect. It is undisputed that the insert contained no such warning. The evidence further shows the substance could have found its way into the subarachnoid space without being actually injected into the space.

In *Parker v. Employer's Mutual Liability Ins. Co. of Wisconsin*, 440 S.W.2d 43, 46 (Tex.1969), we find:

"In Texas, expert medical testimony can enable a plaintiff's action to go to the jury if the testimony is that there is a 'reasonable probability' of a causal connection between an act and a present injury."

See *Galveston H. & S. A. Ry. Co. v. Powers*, 101 Tex. 161, 105 S.W. 491, 493 (1907). Reasonable probability is determined by the substance of the expert testimony. *Insurance Co. of North America v. Myers*, 411 S.W.2d 710, 713 (Tex.1966).

We believe the jury's answers to these issues find ample support in the evidence and, so believing, overrule these points.

Defendant's next point contends the trial court erred in excluding evidence of an agreement of settlement between Dr. Butler and plaintiffs, citing *General Motors Corp. v. Simmons*, 558 S.W.2d 855 (Tex. 1977). This case held that a codefendant's interest in a plaintiff's recovery is a proper subject of cross-examination to show bias or prejudice. However, there must exist an agreement, and in the case at bar we had none. All we had was a discussion of settlement, never accepted, which is not admissible. See 2 C. McCormick & R. Ray, Texas Law of Evidence § 1142 at 29–30 (Texas Practice 2d ed. 1956), and authorities cited. This point is overruled.

Defendant has a point that the finding of damages for conscious pain and suffering is excessive. The jury awarded $50,-000; the trial court reduced this to $25,000. The evidence shows Heflin was so convulsive he had to be tied to his bed, and at that the convulsions were so extreme he fractured a vertebra in his back. His death was indeed a hard one. We are unable to say that $25,000 is excessive in this respect.

Defendant has other points, which we find are without merit, and they are overruled. All points are overruled. The judgment of the trial court is affirmed.

AFFIRMED.